UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:  9:21:-cv-80740-DMM-WM

CELSIUS HOLDINGS, Inc.,

        Plaintiff,

v.

A SHOC BEVERAGE, LLC AND KEURIG
DR PEPPER, INC.,

        Defendants.

## DEFENDANTS' MOTION FOR SANCTIONS AND FEES

Defendants A SHOC Beverage, LLC ("A SHOC") and Keurig Dr Pepper Inc. ("KDP")
(collectively, "the Defendants"), hereby respectfully request that the Court convert the voluntary
dismissal into a dismissal with prejudice, and move on the following grounds for an award of
attorneys' fees and expert fees against Plaintiff Celsius Holdings Inc. ("Celsius") pursuant to 28
U.S.C. § 1927, the Court's inherent powers, and 15 U.S.C. § 1117(a).[1]

A SHOC served a copy of the motion on Celsius on October 14, 2021.  Celsius failed to
"describe in writing and with reasonable particularity" its objections, as required by Local Rule
7.3(b).  Celsius's continued failure to comply with the local rules provides grounds for granting
this motion for sanctions and fees *in toto*.  *See Club Madonna v. City of Miami Beach*, 2015 WL

---

[1] This Court retains jurisdiction to adjudicate a claim for attorneys' fees and other sanctions
resulting from Plaintiff's bad faith conduct.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S.
384, 395-96 (1990).  A SHOC defers to the Court whether it is appropriate to sanction
Plaintiff's counsel under 28 U.S.C. § 1927 or Celsius under the Court's inherent power.  The
substantive analysis under either source of the Court's authority is the same.  *See Amlong &
Amlong v. Denny's, Inc*., 500 F.3d 1230, 1239 (11th Cir. 2007).

5559894 at *9-10 (S.D. Fl. Sept. 22, 2015).  Given Celsius's continued refusal to cooperate, A SHOC requests leave to file a supplemental attorney's fee motion to recover the fees incurred preparing this motion. *See id* (finding movant entitled to fees incurred litigating the fees issue where respondent failed to comply with Local Rule 7.3(b)).

### INTRODUCTION

This case is in a class all by itself.  Celsius brought this case seeking damages and broad injunctive relief in order to prevent competition from a popular energy drink based on legal theories that have been soundly rejected by courts in this District and around the country.  But what really separates this case is the bad faith under which it was brought and conducted.  Celsius's false advertising claims were flatly contradicted ***by scientific studies that were cited in its own Complaint***.  Celsius also claimed that Defendants' products infringed its trade dress (a species of trademark law) by citing to ubiquitous conventions, such as choosing a color scheme that communicates the beverage's flavor, or indicators that the product contains "zero sugar" or "0 SUGAR."  Under black letter law, these common functional conventions cannot be claimed as source identifying by any one company.  Worse, Celsius failed to produce a shred of evidence to support its claims, and asserted frivolous objections that were cut and pasted over and over again. Celsius ***refused to produce a single document***, ***answer a single interrogatory***, and refused to answer ***almost all requests for admission***.  Celsius flouted the Court's scheduling order, claiming that it could proffer expert testimony to support its claims even though ***its proposed experts did not provide the required reports***, instead offering cursory outlines of the testimony that they might theoretically provide at some undefined point in the future.  Celsius forced Defendants to file ***two different motions to compel*** and a motion to address the deficiencies in its expert disclosures, and wasted Defendants' time in ***lengthy and pointless meet and confer discussions***.  And then, faced

2

with a hearing at which this contumacious conduct would be addressed, Celsius abruptly withdrew its claims *without prejudice*, seeking **to preserve its right to bring these claims again**, without facing any consequence for its abuse of process and waste of resources.

Defendants are not aware of any case where a represented Plaintiff (much less a public company), refused to provide **any** evidence in support of its **own** claims. This case was "nothing but a thinly-veiled effort to stifle legitimate competition," *Vital Pharm., Inc. v. Am. Body Bldg. Prod., LLC*, 510 F. Supp. 2d 1043, 1052 (S.D. Fla. 2007), and Defendants should be compensated for unfairly being forced to litigate "against claims that should not have been brought in the first place," *Manhattan Review LLC v. Yun*, 2017 WL 11455317, at *7 (S.D.N.Y. Sept. 21, 2017). Defendants respectfully request that the Court enter an order attaching prejudice to its dismissal of this proceeding, and award attorneys' fees and expert fees and costs under 28 U.S.C. § 1927 and 15 U.S.C. § 1117(a) amounting to $249,357.50.

## BACKGROUND

Celsius filed a nine-count complaint against Defendants, the crux of which was that 1) A SHOC's Accelerator product falsely claimed that it "accelerates metabolism" and is "thermogenic" and 2) that the appearance of the A SHOC Accelerator product was confusingly similar to Celsius's alleged trade dress. Compl., Dkt. 1 ¶¶ 32, 44. Defendants contested the claims and filed a motion to dismiss explaining in detail why Celsius's claims were not only wrong and facially implausible, but also contradicted by the allegations of the complaint itself. Dkt. 27. For example, Celsius's false advertising claims were directly contradicted by **its own studies—incorporated by reference into the Complaint—**showing that caffeine (the primary active ingredient in both Celsius and A SHOC Accelerator) accelerated metabolism and caused thermogenesis. *Id.* at 8-9. Similarly, Celsius's allegedly protected trade dress was based solely on generic industry conventions used

by many competitors to communicate basic product information.  Celsius's trade dress claims therefore failed as a matter of well-established law on two separate grounds, because the trade dress asserted is functional and does not identify the source of the product.  *Id.* at 10-16.

Defendants engaged in discovery while the motion to dismiss was pending, in keeping with the detailed scheduling orders that the Court issued on May 5 and 11, 2021.  Dkt. 11, 20.  Defendants adhered to these orders and produced documents in response to Celsius's requests for production.  A SHOC also produced timely expert reports.  One of these reports, by the Director of the Exercise & Sport Nutrition Lab and Human Clinical Research Facility at Texas A&M University, carefully evaluated the studies cited by Plaintiffs as well as "well-known" research over "decades" into the physiological effects of caffeine.  He opined that decades of research clearly supports Defendants' statement that caffeine accelerates metabolism and causes thermogenesis, and that many competing products make similar claims even though they are sold as beverages and not regulated by the FDA.  *See* Ex. A.  A SHOC also commissioned a scientific likelihood-of-confusion survey by a leading marketing professor at Georgetown University using the methodology that is widely considered the gold standard by courts.  Not surprisingly, it found no likelihood of confusion between the parties' cans.  *See* Ex. B.  And a third expert report was forced to evaluate Plaintiff's claim for damages, even with the handicap that Plaintiff had not participated in discovery or produced any evidence of harm.  *See* Ex. C.

Celsius refused to participate in discovery in any meaningful way or to prosecute its claims, instead pursuing a strategy of needlessly delaying and multiplying proceedings.  Celsius refused to respond to ***a single one*** of A SHOC's standard interrogatories, many of which simply asked Celsius to provide support for the allegations included in its own Complaint.

As just one illustrative example, Celsius refused to answer the following interrogatory seeking the "factual basis" for the key element of its trade dress claim, the allegation that Defendants' can could create a likelihood of confusion (reproduced from Ex. D at 4-5):

**INTERROGATORY NO. 3:**

> Describe in detail the factual basis for and identify all evidence concerning Celsius's allegation at paragraphs 45-47 of the Complaint that the A SHOC Accelerator can "has caused actual consumer confusion" with Celsius products.

Celsius's pattern—for all interrogatories—was to repeat lengthy boilerplate substance-free objections, and then refuse to answer, as shown below (reproduced from Ex. D at 4-5):

> **ANSWER:**
>
> **Celsius objects because the interrogatory is implicitly compound in that Defendants are asking for Celsius to identify all evidence concerning allegations in paragraphs 45-47 of the Complaint. Each of which count against the twenty-five interrogatory limited stated in Fed. R. Civ. P. 33(a)(1).** *See New River Dry Dock, Inc. v. Falls at Marina Bay, L.P.,* **No. 08-60216-CIV, 2008 WL 2620727 at \*3 (S.D. Fla. June 30, 2008)("[w]ithout leave of the court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts…." (citing Fed. R. Civ. P. 33(a));** *Breedlove v. Hardtford Life and Accident Insurance,* **No. 6:11-cv-991-Orl-28GJK, 2012 WL 12905599 at \*3 (M.D. Fla. June 12, 2012) (Interrogatories should be brief, simple, particularized, unambiguous, and capable of being understood by jurors when read in conjunction with the answer) (citing Middle District Discovery Handbook (2001) at 15, IV.A.3).**
>
> **Celsius also objects because this interrogatory is asking for a legal conclusion. Actual consumer confusion is a legal conclusion and it is not proper for Celsius to answer.** *See Silver Streak Trailer Company, LLC v. Thor Industries, Inc.,* **No. 18-14126-CIV-ROSENBERG/MAYNARD, 2018 W 8367073 at \*5 (S.D. Fla. Nov. 15, 2018)("Interrogatories should not be used as a device for compelling the interrogated party to prepare the interrogator's case for him.")(quoting** *Winfield v. St. Joe Paper. Company,* **1977 WL 15327 at \*1 (N.D. Fla. Nov. 10, 1977).**
>
> **The interrogatory is also facially oppressive and unduly burdensome in seeking to require a detailed listing or description of facts in support of contentions. A request seeking "all facts" and "all information related to each and every allegation" is facially burdensome.** *In re MGM Mirage Sec. Litig.,* **No. 2:09-CV-1558-GMN, 2014 WL 6675732, at \*5 (D. Nev. Nov. 25, 2014);** *Wynn Las Vegas v. Zoggolis,* **No. 14-cv–157– MMD–VCF, 2014 WL 2772241, at \*3 (D. Nev. June 17, 2014);** *Switch Commc'ns Grp. v. Ballard,* **No. 2:11-CV-00285-KJD, 2011 WL 3957434, at \*8 (D. Nev. Sept. 7, 2011) (quoting** *Steil v. Humana Kansas City, Inc.,* **1197 F.R.D. 445, 447 (D. Kan. 2000) "***Steal* **[SIC] states that an interrogatory may reasonably ask for the material or principal facts which support a party's contentions. However, 'to require specifically 'each and every' fact and application of law to fact … would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.'").**

Similarly, Celsius unnecessarily multiplied the number of facts that would need to be established through discovery and at trial by refusing to answer Requests for Admissions as to basic, undisputable facts, such as the indisputable appearances of competing products. *See, e.g.*, Ex. E at Request 2-3 (refusing to answer whether "the following image accurately depicts a can of Rowdy Energy as it currently appears in the marketplace"):



Even more remarkably, Celsius actually denied Requests for Admission that asked Celsius to admit that the studies cited in its Complaint included certain phrases, even though those phrases plainly appeared on the face of the studies (Ex. E at 197):

169. Admit that a link to the following scientific study appears on Celsius's website:

Vincent Dalbo et al., Acute effects of ingesting a commercial thermogenic drink on changes in energy expenditure and markers of lipolysis, 5 J. OF INT'L SOC'Y OF SPORTS NUTRITION 6 (2008).

**Admitted.**

170. Admit that the study referred to in Request No. 169 says that "caffeine increases energy metabolism."

**Deny.**

Here is the precise language highlighted as it appears on page 4 of Celsius's study (Ex. F):

Of the active ingredients, caffeine and epigallocatechin gallate (EGCG, an abundant catechin in green tea) [24] are the most common and have been found to increase energy expenditure [8,10,11,25-29] and increase markers of lipolysis [8-11]. In this regard, caffeine increases energy metabolism through stimulation of β-adrenergic receptors and adenyl cyclase resulting in activation of cyclic AMP (cAMP), causing subsequent increases in circulating epinephrine [30,31] and free fatty acids [32]. Caffeine may also enhance lipolysis by inhibiting nucleotide phosphodiesterase resulting in increased tissue concentrations of cAMP and activation of hormone-sensitive lipase, which provides further explanation for the increased circulating levels of free fatty acids seen in the present study [12]. In this regard, caffeine doses of 6 mg·kg⁻¹ in individuals with impaired epinephrine responses have been shown to increase FFA and glycerol concentration inde-

Most egregiously, Celsius refused to produce *any documents* in response to A SHOC's requests for production, many of which simply asked for documents supporting the allegations included in Celsius's Complaint. The following example, taken from Ex. G, at 33-34, is again illustrative, as it was addressed to an element that Celsius was required to prove to establish its trade dress claim:

38. All documents concerning Celsius's allegation at paragraphs 48 and 53 of the

Complaint that Celsius's alleged trade dress is "non-functional."

RESPONSE: Objection. Celsius objects because "all documents concerning Celsius's allegation at paragraphs 48 and 53 of the Complaint that Celsius's alleged trade dress is 'non-functional'" is overly broad, vague, and ambiguous in failing to describe with requisite particularity the items sought to be produced. Rule 34 requires requests for production to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A); see *Awad v. Cici Enterprises*, 2006 U.S. Dist. LEXIS 85123, 2006 WL 4824477, *1 n. 1 (M.D. Fla. November 20, 2006)("A request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for Plaintiff's identification and production of responsive documents." *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 U.S. Dist. LEXIS 28376, at *6 (M.D. Fla. Mar. 8, 2011); *K'napp v. Adams*, No. 1:06—cv—01701—LJO—GSA—PC, 2014 U.S. Dist. LEXIS 31535, 2014 WL 950353, at *6 (E.D. Cal. Mar. 11, 2014) (denying request for production of "all documents related to Defendants' affirmative defenses" for failure to comply with Rule 34's particularity requirements). "The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required." *U.S. v. Nat'l Steel Corp.*, 26 F.R.D. 607, 610 (S.D. Tex. 1960). The portion of the request quoted above fails to comply with the particularity standard in Fed. R. Civ. P 34(b)(1)(A) and requires Celsius to comb through all documents within its custody and control and make a subjective judgment as to the evidentiary or impact of each and every document in order to respond. This is beyond the capability of a man of ordinary intelligence and, as a result, Celsius is unable to respond.

> The request is also overly broad and not relevant to the extent it seeks documents and things with no time frame. The request is also not relevant to the extent it seeks documents and things that have no bearing on the unsupported structure-function claims for the A SHOC Accelerator product.
>
> Celsius also objects because this request calls for a legal conclusion. "Non-functional" is a legal conclusion and Celsius is unable to determine what documents are being asked for in this request.
>
> This request calls for documents and things that are protected by the attorney-client privilege, work product doctrine, and/or any other privilege, immunity, or protection afforded by law inasmuch as all such documents that are responsive to this request that predate the filing of this action are privileged.

In fact, in an attempt to avoid providing any real discovery, Celsius changed position mid-stream and abandoned the central (and repeated) allegation of its false advertising claim, that A SHOC's claims that its product "accelerates metabolism" and is "thermogenic" are supposedly false. *See* Dkt. 1¶¶ 32, 33, 34, 35, 60, 111.

Celsius refused to describe the factual basis for this allegation, claiming that Defendants somehow "mischaracterize[d]" the Complaint, as shown in the image below from Ex. G at 10:

> 10. Describe in detail the factual basis for and identify all evidence that supports the proposition the A SHOC ACCELERATOR product is not "THERMOGENIC."
>
> ANSWER:
>
> Celsius objects because Defendants mischaracterize Celsius's allegation made in the Complaint. The allegation in the Complaint is that "A SHOC and KDP lack any reasonable basis to make the claims for A SHOC ACCELERATOR that the product "ACCELERATES METABOLSIM" or is "THERMOGENIC" and that "A SHOC and KDP lack competent and reliable scientific evidence to support the claims for A SHOC ACCELERATOR that the product "ACCELERATES METABOLISM" or is "THERMOGENIC." (Complaint ¶¶ 32-33). The factual predicate for this question is therefore inconsistent with and different from the allegations in the Complaint. The question is not relevant because Celsius has not alleged that A SHOC ACCELERATOR product is not "THEMORGENIC" but rather A SHOC and KDP lack substantiation to support its claim.

A SHOC's interrogatory was based on language taken right from Celsius's Complaint, as shown in the following image taken from Dkt. 1 at ¶ 111:

> 111.   These false and misleading statements purposefully misrepresent the nature, characteristics, or qualities of A SHOC's products, including but not limited to A SHOC's claims that its A SHOC ACCELERATOR products are "thermogenic" and "accelerates metabolism," when in fact they do not.

Celsius's conduct with respect to expert discovery was just as bad.  Pursuant to this Court's Pretrial Scheduling Order, Celsius was obligated to "furnish opposing counsel with expert reports

or summaries of its expert witnesses' anticipated testimony in accordance with Fed. R. Civ. P. 26(a)(2)" by August 9, 2021. Dkt. No. 20 at 5.  Celsius disregarded the Court's expert disclosure deadline, and tried to cover for its failure by providing summaries of proposed expert reports that indisputably failed to provide the required information.  *See* Dkt. 49 at 3-4 (detailing the elements not provided).  Incredibly, Celsius's supposed expert disclosure merely "propose[d] to do the actual survey work on which" it wanted its proffered survey expert to testify.  Dkt. 47 at 4.

Celsius's flagrant disregard for its basic discovery obligations forced Defendants to file two motions to compel (*see* Dkt. 34 & 35) and a motion to exclude its experts (*see* Dkt. 39). Celsius failed to offer any remotely plausible explanation for its refusal to participate in discovery, and did not even respond to A SHOC's Motion to Compel Production of Documents. *See* Dkt. 34. In compliance with Magistrate Judge Matthewman's order setting the briefing schedule, the parties met and conferred on September 13, 2021.  Celsius belatedly agreed to produce documents in response to Defendants' request for production going back six years.  Celsius's counsel was not prepared to meet and confer on any of the other discovery issues.  Without notice or warning, Celsius voluntarily dismissed this case the next day, apparently in order to avoid having to provide any discovery or produce any evidence to support its claims, and in an attempt to avoid any court-imposed sanctions resulting from its conduct.

## ARGUMENT

### I.    Defendants Request a Dismissal with Prejudice as a Sanction for Celsius's Bad Faith Conduct.

On September 15, 2021, this Court entered an order on Plaintiff's Notice of Voluntary Dismissal and dismissed the case without prejudice.  Dkt. 52.  Defendants respectfully ask that the Court convert the dismissal into a dismissal with prejudice as a sanction for Celsius's bad faith conduct in this matter.

Under Rule 41(a)(1)(A)(i), a plaintiff may voluntarily dismiss a case without a court order by filing a notice of dismissal before the defendant files an answer or a motion for summary judgment. Rule 41(a)(1)(B) provides that such a dismissal is, by default, without prejudice. However, "dismissal with prejudice is a permissible sanction if a party" litigates in "bad faith." *See, e.g.*, *Zow v. Regions Fin. Corp.,* 595 F. App'x 887, 888-89 (11th Cir. 2014) (affirming dismissal of case with prejudice after plaintiff had voluntarily dismissed case under 41(a)(1)(a)).

Here, the Court explicitly warned the parties that failure to abide by the pretrial scheduling order would result in "sanctions or dismissal." Dkt. 20 ¶9; *see also* Dkt. 37. Nonetheless, Celsius flagrantly disregarded not one, but ***nearly all*** of the deadlines imposed by this Court and the disclosure obligations under Civil Rule 26. Defendants submitted requests for production of documents on June 18, 2021, yet by September 15, 2021, when this action was dismissed, had not received a single document. Five weeks after expert reports were due, Celsius admitted that it was "clearly obligated," but had failed to provide Defendants with the requisite information required for its expert disclosures under Rule 26(a)(2), forcing Defendants to file a motion to exclude. Dkt. 47 at 2-3. Celsius failed to provide any justifiable basis for its refusal to comply with the Court's orders or participate in the discovery process. Celsius's conduct was not due to negligence, or confusion, but rather "intentional, bad faith conduct." *Zapata v. CarMax, Inc.*, 2019 WL 2267260, at *4 (S.D. Fla. Feb. 4, 2019); *see also Shortz v. City of Tuskegee, Ala.*, 352 F. App'x 355, 359-60 (11th Cir. 2009) (finding district court did not abuse its discretion in dismissing plaintiff's claims with prejudice in light of plaintiff's "continued failure to comply with the court's orders and his failure to offer an explanation for his non-compliance").

Days before this Court's hearing on Defendants' discovery motions, Celsius voluntarily dismissed this action to avoid sanctions for failing "to comply with all discovery obligations,"

"with applicable rules and orders," and for taking a "frivolous, dilatory or unreasonable discovery position." Dkt. 37.

A dismissal with prejudice is an appropriate sanction due to Celsius' willful violation of this Court's Orders. *See Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 998 (11th Cir. 2020) ("Appropriate sanctions" for bad faith conduct "include dismissal or an award of attorney's fees"); *Zow*, 595 F. App'x at 888-889. Any lesser sanction would "merely serve to trivialize Plaintiff's failure to prosecute this case as required by the rules." *Summerlin v. Stars-N-Strikes—Dallas*, 2013 WL 5360394, at *4 (N.D. Ga. Sept. 25, 2013) (citation omitted). Absent a dismissal with prejudice, Celsius may simply give itself a do-over and refile this action, avoiding any repercussion for disregarding the Court's orders and wasting this Court's, and A SHOC's, time and resources.

## II.     A SHOC Is Entitled to Its Attorneys' Fees Under 28 U.S.C. § 1927.

Title 28, Section 1927 provides that any attorney who so "multiplies court proceedings unreasonably and vexatiously" may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Sanctions are warranted where an attorney "knowingly or recklessly pursue[s] a frivolous claim," or where "the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong*, 500 F.3d at 1241-42. Celsius's conduct in this case is a textbook example of proceedings that have been multiplied "unreasonably and vexatiously." It brought claims with no basis in law or fact and dragged out discovery with frivolous objections. It willfully disregarded the Court's scheduling order, finally withdrawing its claims only to avoid appearing before this Court to justify its conduct. An award of sanctions is appropriate.

### A.      Plaintiff's Claims Were Objectively Frivolous and Pursued in Bad Faith.

*First*, the Court should sanction Celsius because its false advertising claim rested on assertions that were "directly contradicted" by evidence in Celsius's own possession that it should have "discover[ed] before filing suit." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306-07 (Fed. Cir. 2017). The threshold requirement for pleading a false advertising claim is a false statement. *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020). The only "false and misleading statements" that Celsius's complaint pointed to were "A SHOC's claims that its A SHOC ACCELERATOR products are 'thermogenic' and 'accelerates metabolism,' when in fact they do not." Dkt. 1 ¶¶ 60 & 111; *see also id.* ¶ 34.

These allegations were contradicted by *Celsius's own studies* proving that caffeine (an active ingredient in A SHOC Accelerator) accelerates metabolism and causes thermogenesis:

- "[C]affeine increases energy metabolism . . . ." Ex. F at 4.

-  "Further, *single 100 mg doses of caffeine have been shown to increase metabolic rate* 3-4%, while a titrated dosing pattern of 6 x 100 mg over a 12 h period may increase energy expenditure 8-12%." Ex. F at 4 (emphasis added).

- "Nutritional supplements containing [caffeine] purportedly facilitate thermogenesis and lipolysis. For instance, *administering as little as 100 mg of caffeine* has been shown to acutely increase energy expenditure by 3-4% in humans." Ex. H at 2 (emphasis added).

- "Our lab has previously demonstrated a popular [over-the-counter] thermogenic beverage (TD) containing caffeine and EGCG to be effective in acutely increasing resting energy expenditure." Ex. H at 2.

- "[C]affeine is the primary active ingredient of TD [thermogenic drinks]." Ex. H at 4.

-  "[I]t is *well-known* caffeine has a dose-dependent effect on metabolic rate . . . ." Ex. I at 1 & 3 (emphasis added).

- "Many of these ingredients, *particularly caffeine*, guarana extract, and green tea extract can be found in capsule form as dietary supplements and *have been previously shown to cause acute increases in metabolic rate*." Ex. I at 2 (emphases added).

- Attributing finding that Celsius "stimulates thermogenesis" relative to Diet Coke to the fact that "Celsius contains 4.4 times more caffeine than Diet Coke." Ex. I at 4.

- "[C]affeine and green tea are the principal active components in Celsius." Ex. I at 4.

Not only were Celsius's allegations contradicted by its own documents, the allegations were undercut by *decades* of unequivocal science investigating the physiological effects of caffeine. As A SHOC's expert explained in his unrebutted expert report, the "pharmacological and physiological properties of caffeine are well known." Ex. A at 11. Based "on this well-established research over the last 40 years or so, it is reasonable to conclude that any beverage . . . that contains at least 100 mg of caffeine can be marketed as thermogenic." *Id.* Celsius should have reviewed this mountain of unambiguous research undermining its claims before filing suit. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (affirming sanctions where counsel "failed to make a reasonable inquiry into the facts on which [Plaintiffs'] claim[s] w[ere] predicated"); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (similar).

Celsius never defended its allegation that A SHOC's "thermogenic" and "accelerates metabolism" claims are actually false. Dkt. 32 at 14. It did not substantively respond to A SHOC's motion to dismiss pointing out that its claims were flatly contradicted by its own science. *Id.* at 12. And during discovery, it produced no evidence supporting its allegations. *See Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987) (finding Rule 11 sanctions appropriate where plaintiffs offered "no evidence" to support their allegations). Remarkably, its responses and objections to A SHOC's interrogatories *conceded* that it didn't have any evidence supporting its claim that A SHOC had made false statements, and instead clung to its alternate—*legally foreclosed*—assertion that it could sustain a false advertising claim under the Lanham Act merely by asserting that A SHOC's claims lacks substantiation or that A SHOC somehow violated an entirely different statute, the Food, Drug & Cosmetic Act. *See* Ex. D ¶ 9 ("The question is not relevant because

Celsius has not alleged that A SHOC ACCELERATOR product does not 'ACCELERATE METABOLISM' but rather A SHOC and KDP lack substantiation to support its claim.") (emphasis added); *id.* ¶ 10 (reproduced *supra* at p. 8).[2]

Celsius brought a false advertising claim predicated on allegations contradicted by studies cited in Celsius's own Complaint, and by decades of scientific research.  It did so in an obvious attempt to force A SHOC into an expensive and unnecessary legal battle and stymy A SHOC's entry into the energy drink market.  Celsius should be sanctioned for such behavior.  *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018) (affirming motion for attorney's fees and costs when case was "baseless").

***Second***, the Court should sanction Celsius because its rewritten claims were "not legally cognizable" and clearly foreclosed by existing caselaw.  *Thomas v. Early Cnty*, 360 F. App'x 71, 75 (11th Cir. 2010) (reversing denial of sanctions); *see also Select Export Corp. v. Jack Richeson & Co., Inc*., 2011 WL 13135576, at *2 (S.D. Fla. June 28, 2011) (granting Rule 11 sanctions where plaintiff filed complaint "based on a legal theory that had no reasonable chance of success").  The law is unambiguous that Celsius cannot step into the shoes of the FDA to enforce compliance with the FDCA's substantiation requirements.  The FDCA provides the United States, not private parties, with sole enforcement authority.  *See* 21 U.S.C. § 337(a).  Courts do not have jurisdiction to hear Lanham Act or state law claims that "exist solely by virtue of the FDCA," *see Buckman Co. v. Plaintiffs' Legal Comm*., 531 U.S. 341, 353 (2001), or would require litigation of an underlying FDCA violation, *see Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 969

---

[2]  *See also* Dkt. 33 at 7-10 (citing clear case law that "a Lanham Act plaintiff bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof" and a "Court cannot hear a Lanham Act claim that would require 'litigation of [an] alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was a violation'").

(Fed. Cir. 2019); *Thermolife Int'l LLC v. Am. Fitness Wholesalers LLC.*, 2020 WL 122874, at *4, 7 (D. Az. Jan. 10, 2020) (finding case exceptional and awarding fees due to "Plaintiff's apparent attempt to step into the shoes of the [FDA]" and noting that it is long-established that the FDCA "does not establish any private right of action").

**Third**, the Court should sanction Celsius because its frivolous trade dress claims were premised on standard conventions that are not source identifying and communicate factual information, and are therefore not protectible trade dress.  Even a cursory review of the appearance of rival products shows that competitors commonly use color to communicate flavor, include benefit footer bars along the bottom of the can, locate flavor below the logo, include prominent zero sugar callouts, and place important information at the lip of the can, all of which were features Celsius claimed as its own trade dress in this case:



Whether taken in isolation or together, there is no question that these elements are the "prototypical features" of energy drink cans, and therefore not protectible. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1324 (11th Cir. 2012).

Not surprisingly, Plaintiff offered "no evidence" supporting *a single element* of its trade dress claim. *Walden*, 834 F.2d at 965. It did not produce a single document, refused to answer standard interrogatories asking it to explain the basis for its claims, and "intentionally chose not to present survey evidence" supporting its allegations. *Vital Pharm., Inc. v. Am. Body Bldg*., 510 F. Supp. 2d 1043, 1049 (S.D. Fla. 2007) (awarding fees); *see also Pro Video Instruments, LLC v. Thor Fiber, Inc.*, 2021 WL 487020, at *3 (M.D. Fla. Feb. 10, 2021) (finding case exceptional where "there was no [] evidence to demonstrate a likelihood of confusion"). Even a bare minimum of pre-litigation due diligence would have revealed that its trade dress claims flouted basic principles of trade dress law and were facially frivolous.

Celsius, through its attorney, knowingly and recklessly pursued frivolous claims that were affirmatively contradicted by its own evidence, squarely foreclosed by existing caselaw, completely fact-free and unsupported, and undertaken without any pre-litigation due diligence. Celsius's decision to pursue clearly frivolous and unsupported claims directly led to A SHOC incurring substantial fees, including necessitating hiring three experts. The appropriate response is to award sanctions for burdening A SHOC with attorneys' and expert fees and costs incurred defending obviously frivolous and unsupported claims.

### B.    Celsius Litigated This Case Unreasonably and in Bad Faith.

Throughout the litigation, Celsius flouted this Court's admonition that non-compliance with the pretrial scheduling order would result in "sanctions or dismissal," Dkt. 20 ¶ 9, and that failure to "comply with all discovery obligations . . . applicable rules or orders" or advancing a

"frivolous, dilatory or unreasonable discovery position" would result in "sanctions," Dkt. 37. Instead, Celsius litigated this case in bad faith in a transparent attempt to drive up A SHOC's legal fees and evade having to produce any evidence supporting its allegations.  At the time Celsius voluntarily dismissed its Complaint, roughly six weeks before the end of the discovery period, it had not produced *a single document*, refused to answer to *a single interrogatory*, refused to answer all but a few requests for admission, and submitted expert disclosures that did not remotely comply with the Federal Rules.  It provided *zero evidence* supporting any of its claims.  Its entire litigation strategy appeared intentionally designed to "needlessly obstruct the litigation of" its own claims, and avoid having to participate in discovery or produce any evidence supporting its allegations.  *See, e.g.*, *Amlong*, 500 F.3d at 1242; *Barnes,* 158 F.3d at 1214 (11th Cir. 1998). Indeed, Celsius caused A SHOC to incur substantial fees and costs while resisting spending any resources on prosecuting its own claim.

A SHOC served Requests for Admissions that asked Celsius to confirm basic, incontrovertible facts such as the appearance of cans in the marketplace and statements included in Celsius's own scientific studies in order to short-circuit what could be an otherwise cumbersome authentication process.  Celsius refused.  The parties engaged in extensive and ultimately pointless meet and confer telephonic conferences, during which Celsius made clear that it would not admit basic facts without Court intervention.  Dkt. 45 ¶ 5.

Plaintiff's excuses for failing to admit basic facts do not pass the blush test.  Its principal objection was that the requests were irrelevant, *see* Dkt. 43 at 2-3, even though the appearance of competing cans featuring identical conventions in the marketplace is *the most important factor*

when evaluating whether alleged trade dress is non-functional and source identifying, which are central issues in trade dress cases.[3]

Even more remarkably, Celsius *denied* that its own scientific studies, which Celsius incorporated into its Complaint, say what they say.  *See* Ex. E, RFA Nos. 164, 166, 170, 172, 174, 176.  For example, Celsius denied that the Roberts, et al., study says that "administering as little as 100 mg of caffeine has been shown to acutely increase energy expenditure by 3-4% in humans," even though those words appear on the first substantive page.  *See* Ex. H.

Similarly, Celsius refused to answer standard interrogatories seeking the factual basis for the assertions included in its Complaint.  *See* Ex. D.  The parties repeatedly met and conferred, and Celsius refused to provide any additional information, instead clinging to objections that are plainly frivolous.  Celsius primarily objected, for example, that Defendants sought "legal conclusions," *see* Dkt. 43 at 5, when the interrogatories asked only for the factual basis for Celsius's own claims.  *See, e.g.*, Ex. D ¶1 ("Describe in detail the *factual basis* for and identify all *evidence* concerning Celsius's allegation . . .") (emphasis added).

On similar grounds, Celsius refused to produce any documents in response to requests for production that asked for basic information about its own claims, instead asserting facially implausible boilerplate objections.  *See generally* Dkt. Nos. 34-35.  For example, Celsius objected to Defendants' standard request for documents related to Celsius's claim for damages as "overly broad, vague, and ambiguous." *See* Dkt. 34-2 at ¶84 (seeking "all documents concerning Celsius's allegations that it has sustained actual damages, as alleged in paragraph d of the Prayer for Relief

---

[3]  *See Miller's Ale House*, 702 F.3d at 1324 (holding that "mere refinements" of "commonly adopted and well-known" conventions are not protectible); *Vital Pharm., Inc. v. Monster Energy Co*., 2019 WL 5212859, at *3 (S.D. Fla. Oct. 16, 2019) (questioning trade dress claim because "many companies employ these (or very similar) design elements").

in the Complaint").  Finally, Celsius failed to submit expert disclosures that complied with this Court's scheduling order and Civil Rule 26.  *See* Dkt. 39 (motion to exclude).

Celsius's bad faith refusal to participate in discovery forced A SHOC to file two motions to compel and a motion to exclude Celsius's expert reports, *see* Dkt. 34, 35, 39.  Celsius submitted cursory responses to A SHOC's Motion to Compel Answers to RFAs and Interrogatories, *see* Dkt. 43, and Motion to Exclude Expert Reports, *see* Dkt. 47.  As explained above, neither response raised even facially plausible explanations for its failure to participate in discovery.  It failed to respond to A SHOC's Motion to Compel Production of Documents at all.  *See* Dkt. 45 at 1 n.1.

The parties met and conferred on September 10, but Plaintiff's counsel was not prepared to discuss the substance of any of the discovery issues.  During another meet and confer on September 13, Plaintiff agreed to produce responsive documents for the past six years but was not prepared to discuss any other discovery issues.  The following day, Celsius voluntarily dismissed its Complaint in an obvious gambit to avoid having to produce evidence supporting its claims and to avoid having to explain its refusal to participate in discovery.  This course of conduct is, in a word, sanctionable.

## III.    A SHOC Is Entitled to Its Attorneys' Fees Under the Lanham Act.

The Lanham Act provides that "[t]he Court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  A defendant is not typically a "prevailing party" when a plaintiff voluntarily dismisses its complaint without prejudice.  A judicial determination that Celsius acted in bad faith by bringing obviously frivolous and unsupported claims, however, qualifies as a "judicial imprimatur" on the merits of Celsius's claims.  *See CRST Van Expedited v. EEOC*, 578 U.S. 419, 422 (2016).  For the reasons stated above, this case "stands out from others with respect to the substantive strength of the party's

litigating position" and "the unreasonable manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018).  Awarding attorneys' fees would also promote the fee-shifting provision's purpose "to deter the bringing of lawsuits without foundation" and "sparing defendants from the costs of frivolous litigation." *CRST*, 578 U.S. at 432.

## IV.   The Amount of Fees and Their Allocation.

Defendants expended in excess of $350,000 litigating this case.  Defendants seek to recover $249,357.50, which constitutes its reasonable fees and costs incurred following the filing of its motion to dismiss. *See Wachovia Bank v. Tien*, 406 F. App'x 378, 383 (11th Cir. 2010) (attorney's fees and expert fees are proper sanctions).  At that point, it should have been apparent that Celsius's claims were meritless.  The fees incurred after that time were directly caused by opposing counsel's vexatious bad faith conduct.  Consistent with local rule 7.3(a):

1. The accompanying Declaration of Howard S. Hogan provides the terms of the applicable fee arrangements between A SHOC and counsel;

2. Exhibit J provides the names, experience, and qualifications of the attorneys for whom fees are sought;

3. Exhibit K & L provides the number of hours expended by each time keeper, a description of the tasks performed, and the claimed hourly rate for each attorney;

4. Exhibits M-P provide the fees incurred by A SHOC's experts.

Defendants are seeking recovery based on hourly rates in line with the prevailing rate in the Southern District of Florida. *Domond*, 750 F. App'x at 848 (standard Miami partner rate is $655 per hour).  A SHOC is not seeking to recover for any time where more than one attorney attended a discovery conference, for internal conferences, or for other duplicative attorney time.

## CONCLUSION

Defendants request that the Court convert its dismissal of this action into a dismissal with prejudice and award A SHOC its reasonable attorneys' and expert fees of $249,357.50.

Date: November 5, 2021                    Respectfully submitted,

By:    /s/ *Kevin C. Kaplan*
               **Kevin C. Kaplan, Esq.**
               Florida Bar No. 933848
               kkaplan@coffeyburlington.com
               lperez@coffeyburlington.com
               service@coffeyburlington.com
               **COFFEY BURLINGTON, P.L.**
               2601 South Bayshore Drive, Penthouse One
               Miami, Florida  33133
               Telephone: (305) 858-2900
               Facsimile:  (305) 858-5261

               -and-

By:     /s/ *Howard S. Hogan*
               **Howard S. Hogan, Esq.**
               (admitted pro hac vice)
               hhogan@gibsondunn.com
               **Christopher F. Kopp, Esq.**
               (admitted pro hac vice)
               ckopp@gibsondunn.com
               **GIBSON, DUNN & CRUTCHER, LLP**
               1050 Connecticut Avenue, N.W.
               Washington, DC 20036,
               Telephone: (202) 955-8619
               Facsimile: (202) 831-6033

               *Counsel for Defendants A SHOC Beverage, LLC and*
               *KEURIG DR PEPPER INC.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served by Notice of

Electronic Filing generated by CM/ECF, on November 5, 2021, on all counsel or parties of record

on the Service List below.

*/s/ Kevin C. Kaplan*
Kevin C. Kaplan

| **SERVICE LIST**<br>***Celsius Holdings, Inc. v. A SHOC Beverage, et al.***<br>**Case No. 21-80740-CIV-DMM/WM** | |
|---|---|
| **Joel B. Rothman, Esq.**<br>joel.rothman@sriplaw.com<br>**Craig A. Wirth, Esq.**<br>craig.wirth@sriplaw.com<br>**SRIPLAW**<br>21301 Powerline Road, Suite 100<br>Boca Raton, Florida 33433<br>Telephone: (561) 404-4350<br>Facsimile:  (561) 404-4353<br><br>*Counsel for Plaintiff Celsius Holdings, Inc.* | |

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3</u>

The undersigned certifies that this motion for attorneys' fees has been filed in accordance with the United States District Court for the Southern District of Florida's Local Rule 7.3(a).  If, for any reason, the documents in support of A SHOC's fee request are found to be inadequate under Rule 7.3(a), A SHOC respectfully requests that the Court determine entitlement prior to submission on the issue of amount, consistent with Local Rule 7.3 and Civil Rule 54(d)(2)(C).

The undersigned also certifies that, in accordance with this Court's Local Rule 7.3(b), on October 14, 2021, a draft of this motion for attorneys' fees was served more than thirty (30) days prior to the deadline for filing, the deadline for which is November 15, 2021.  The undersigned further certifies that, on November 5, 2021, twenty-one (21) days following service of the draft motion, the parties met and conferred but did not reach agreement on entitlement or amount. Celsius did not "describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, [or] provide supporting legal authority," as required by Local Rule 7.3(b).

Dated: November 5, 2021                    Respectfully submitted,

By:    /s/ *Kevin C. Kaplan*
                      **Kevin C. Kaplan, Esq.**
                      Florida Bar No. 933848
                      kkaplan@coffeyburlington.com
                      lperez@coffeyburlington.com
                      service@coffeyburlington.com
                      **COFFEY BURLINGTON, P.L.**
                      2601 South Bayshore Drive, Penthouse One
                      Miami, Florida  33133
                      Telephone: (305) 858-2900
                      Facsimile:  (305) 858-5261