# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-80740-CV-MIDDLEBROOKS

CELSIUS HOLDINGS, INC.,

    Plaintiff,

v.

A SHOC BEVERAGE, LLC, *et al*,

    Defendants.
_____/

## **ORDER GRANTING DEFENDANTS' MOTION FOR SANCTIONS AND FEES**

THIS CAUSE comes before the Court on Defendants' Motion for Sanctions and Fees, filed on November 5, 2021. (DE 54). The Motion is fully briefed. (DE 57; DE 60). A hearing on the Motion was held on May 12, 2022. For the reasons explained below, Defendants' Motion is granted.

### I.    **Background**

Plaintiff initiated this lawsuit on April 20, 2021, asserting nine counts[1] against Defendants for violations of the Lanham Act, the California Unfair Competition Law, the Florida Unfair and Deceptive Trade Practices Act, and common law unfair competition under California and Florida law based on the trade dress and labeling on Defendant's A SHOC energy drink. (DE 1). Put simply, Plaintiff alleges that A SHOC infringed its trade dress, and that the label on A SHOC's product is false and misleading. On May 5, 2021, I set this case for trial during the two-week period beginning January 18, 2022. (DE 11). And on May 11, 2021, Magistrate Judge Brannon issued a

---

[1] The numerical counts in Plaintiff's Complaint are hard to follow. They are listed as Count I, Count II, Count III, Count IV, Count VII, Count XI, Count XII, Count VIII, and Count X, with no Counts V, VI, or IX.

Pretrial Scheduling Order that set, *inter alia*, August 9, 2021 as Plaintiff's deadline to furnish expert reports or summaries, and November 1, 2021 as the deadline to complete all discovery. (DE 20).

On May 28, 2021, Defendants filed a Motion to Dismiss Plaintiff's Complaint, arguing that "(I) Celsius's trade dress claims rely entirely on functional (and common) industry conventions like the use of different colors to denote different flavors, rather than anything that is unique to Celsius; and (II) the scientific studies cited in Celsius's own Complaint definitely establish that Defendants have used the terms at issue properly." (DE 27 at 1). Defendants also filed a number of discovery motions, including a Motion to Compel Production of Documents (DE 34), Motion to Compel Answers to Requests for Admission and Interrogatories (DE 35), and Motion to Exclude Testimony of Ralph Blessing and Christopher Lockwood (DE 39), Plaintiff's experts. A hearing on Defendants' discovery motions was set for September 20, 2021. (DE 37). But one week prior to that hearing, Plaintiff voluntarily dismissed this action without prejudice. (DE 50).

This Motion for Sanctions and Fees followed. (DE 54). Defendants request that I convert Plaintiff's voluntary dismissal into a dismissal with prejudice, and that I award them their attorneys' fees and expert fees pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and 15 U.S.C. § 1117(a). They contend that this "case is in a class all by itself" because of the "bad faith under which it was brought and conducted," as evidenced by: (1) the fact that Plaintiff's false advertising claims were contradicted by the studies cited in its own Complaint; (2) Plaintiff's failure to meaningfully participate in discovery; and (3) the timing of Plaintiff's dismissal of this action, a week before a hearing was scheduled to be held on Defendants' discovery motions. (DE 54 at 2–3). Plaintiff responds that its false advertising claims are supported by the fact that A SHOC did not test its formula like Plaintiff had done, that its discovery objections were made in

good faith, and that it dismissed the case because A SHOC announced it was rebranding. For the reasons explained below, I agree with Defendants that this is an extraordinary case, and Defendants' Motion is therefore granted.

## II. Discussion

In the present Motion, Defendants seek two forms of relief. First, Defendants request that I convert Plaintiff's voluntary dismissal *without* prejudice into a dismissal *with* prejudice as a discovery sanction. And second, they request their attorneys' fees and expert fees as a sanction for Plaintiff's pursuit of frivolous claims and bad faith litigation conduct. I address each in turn.

### A. Dismissal with Prejudice

"[D]ismissal with prejudice is a permissible sanction if a party" litigates in "bad faith." *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 888–89 (11th Cir. 2014). In support of their argument that Plaintiff litigated this case in bad faith, Defendants point to the fact that Plaintiff failed to abide by nearly all of the discovery deadlines in this matter and failed to participate in any meaningful discovery: just weeks before the end of the discovery period, Plaintiff had produced no documents and refused to respond to almost all written discovery. Then, just days before a hearing before Judge Matthewman on Defendants' discovery motions, Plaintiff dismissed this case without prejudice. Plaintiff acknowledges that it did not produce documents but maintains that Defendants' discovery requests were objectionable. (DE 57 at 8). Plaintiff further argues that it dismissed this action because Defendant announced it was rebranding certain products, not because of the discovery hearing before Judge Matthewman, although Plaintiff's counsel stated at the hearing on this Motion that he had not reviewed the new designs prior to the dismissal. (DE 65 at 21:11–15).

3

"The Federal Rules of Civil Procedure provide a district court with authority to impose sanctions, including dismissal, on a party for failing to comply with a court's discovery order." *Shortz v. City of Tuskegee, Ala.*, 352 Fed. App'x 355, 359 (11th Cir. 2009) (citing Fed. R. Civ. P. 37(b)(2)). "Dismissal with prejudice is the most severe Rule 37 sanction," but it "may be appropriate when a plaintiff's recalcitrance is due to willfulness, bad faith or fault." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Dismissal is not an abuse of discretion "[w]hen a party demonstrates a flagrant disregard for the court and the discovery process." *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982).

Here, I find that Plaintiff flagrantly disregarded the discovery process by refusing to meaningfully participate in discovery, serving boilerplate objections to even the most straightforward discovery requests, and repeatedly failing to comply with this Court's deadlines. Plaintiff responded to almost every request for inspection and production with a lengthy, generic, substance-free objection that the request was broad and vague. *See, e.g.,* DE 54-2, Ex. G., Responses to Requests 1, 2, 3, 4, 5, 6 and 7). This does not reflect a good faith effort to participate in the discovery process. Plaintiff also failed to answer Requests for Admission as to basic, undisputable facts, such as the appearances of competing products or what certain documents say. *See, e.g.,* DE 54-2. Ex. E at Request 2–3 (refusing to answer whether "the following image accurately depicts a can of Rowdy Energy as it currently appears in the marketplace"); Ex. E. at 197 (refusing to admit that "the study referred to in Request No. 169 says that 'caffeine increases energy metabolism,'" when the study plainly states that "caffeine increases energy metabolism through [a scientific process]"). I am persuaded that these objections, combined with Plaintiff's failure to produce any documents or other evidence, and the timing of Plaintiff's dismissal on the eve of the hearing before Judge Matthewman, rise to the level of bad faith. Thus, I find that it is

appropriate to convert the dismissal without prejudice in this matter to a dismissal with prejudice. *See Shortz*, 352 Fed. App'x at 359; *Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 998 (11th Cir. 2020) ("Appropriate sanctions" for bad faith conduct "include dismissal or an award of attorney's fees").

### B. Attorneys' Fees

Next, Defendants seek an award of attorneys' fees pursuant to 28 U.S.C. § 1927, under the Court's inherent powers, or under the Lanham Act. Under § 1927, any attorney who so "multiplies court proceedings unreasonably and vexatiously" may be required by the court "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions are warranted where an attorney "knowingly or recklessly pursue[s] a frivolous claim," or where "the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong*, 500 F.3d at 1241–42 (11th Cir.). Defendants contend that this standard is met here because Plaintiff "brought claims with no basis in law or fact and dragged out discovery with frivolous objections" and "willfully disregarded the Court's scheduling order" before "finally withdrawing its claims only to avoid appearing before this Court to justify its conduct." (DE 54 at 11).

I agree. I find that the weakness of Plaintiff's claims, combined with its conduct throughout the discovery process, rise to the level of bad faith, and I will therefore award Defendants their attorneys' fees as a sanction.[2] The fatal flaws in Plaintiff's case should have been apparent at least from the date on which Defendants filed their motion to dismiss. As to Plaintiff's false advertising claim, at the very minimum, Plaintiff needed to identify a false statement. *Warren Tech., Inc. v.*

---

[2] Because I have concluded that Defendants are entitled to recover their attorneys' fees under § 1937, I do not reach their arguments under the Court's inherent powers or the Lanham Act.

5

*UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020). Plaintiff's Complaint asserted that the false statements were "A SHOC's claims that its A SHOC ACCELLERATOR products are 'thermogenic' and 'accelerates metabolism,' when in fact they [are not and] do not." (DE 1 at ¶¶ 60, 111). But Plaintiff's own studies suggest that these claims were *not* false, as caffeine is an active ingredient in Defendants' product, and Plaintiff's studies unambiguously explain that "caffeine increases energy metabolism."[3] (DE 54-2, Ex. F at 4). And even if not for these studies, Plaintiff's claims are directly undercut by well-established research on caffeine and thermogenesis. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (affirming sanctions where counsel "failed to make a reasonable inquiry into the facts on which [Plaintiffs'] claim[s] w[ere] predicated"); *see also Barnes v Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Given the scientific consensus in this area, it is no wonder that Plaintiff did not—and likely was unable to—produce any evidence to support its allegations.

Plaintiff's FDCA and trade dress claims fair no better. First, Plaintiff's FDCA claims were not legally cognizable because the FDCA provides the United States, not private parties, with sole enforcement authority under that Act. *See* 21 U.S.C. § 3337(a). As a result, courts do not have jurisdiction to hear Lanham Act or state law claims that "exist solely by virtue of the FDCA," *see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 241, 252 (2001), or would require litigation of an underlying FDCA violation, *see Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 969 (Fed. Cir. 2019). As to Plaintiff's trade dress claims, they appear to be premised on standard

---

[3] The studies further explain that "single 100 mg doses of caffeine have been shown to increase metabolic rate 3–4%, while a titrated dosing pattern of 6 x 100 mg over a 12 h period may increase expenditure 8–12%" and that "[n]utritional supplements containing [caffeine] purportedly facilitate thermogenesis and lipolysis. For instance, administering as little as 100 mg of caffeine has been shown to acutely increase energy expenditure by 3–4% in humans." (DE 54-2. Ex. F at; DE 54-2 Ex. H at 2).

conventions that are not source identifying and communicate practical information to consumers—i.e., a "no sugar" label in a prominent position on the top of the can and using color to identify the flavor of the beverage below the logo. (*See* DE 1 at ¶¶ 38–39). To state a claim under this cause of action, Plaintiff must point to some non-functional design elements that communicate a specific source. The practical features that Plaintiff references in its Complaint in support of this claim are not protectible trade dress, and Plaintiff and its counsel should have known as much. *See Miller Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1324 (11th Cir. 2012). That Defendants indicated that their product contains no sugar at the top of the can—just as most other energy drinks in the market do—presents no cognizable violation, nor does identifying the product flavor on the can. *See Dippin' Dots, Inc., v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004). Plaintiff does not have a monopoly right to the use of specific color/flavor combinations.

Moreover, as already discussed above, Plaintiff has failed to offer any justification for its failure to meaningfully participate in discovery, which caused Defendants to file multiple discovery motions, unnecessarily and vexatiously multiplying litigation and driving up Defendants' attorneys' fees. Plaintiff did not meaningfully participate in the discovery process, despite being the one to initiate this lawsuit. Plaintiff voluntarily dismissed this case only six weeks before the end of discovery, and even at that advanced stage had not produced a single document, answered a single interrogatory, or produced any evidence supporting its allegations. Based on this conduct, I find that Plaintiff "needlessly obstruct[ed] the litigation" of its own claims, and sanctions in the form of Defendants' attorneys' and expert fees are therefore appropriate. *See, e.g., Amlong*, 500 F.3d at 1242.

## C. Reasonableness of Fees

Having determined that Defendants are entitled to recover their attorneys' fees, I must now evaluate whether the amount requested by Defendants is reasonable. Defendants represent that they have expended in excess of $350,000 litigating this case, but they only seek to recover $249,357.50, which constitutes their reasonable fees and costs incurred following the filing of their motion to dismiss because "[a]t that point, it should have been apparent that [Plaintiff's] claims were meritless."

"The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). That "lodestar" may be adjusted after considering other factors. *See id.* (citations omitted). Under this method, the Court must determine whether the fee applicant has satisfied the burden of establishing that the requested hourly rate is reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citations omitted). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.*

Turning to the number of hours, in determining the number of hours "reasonably expended," the Supreme Court requires fee applicants to exercise "billing judgment." *Hensley*, 461 U.S. at 434 (citations omitted). Therefore, attorneys "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* Here, Defendants break down the rates and hours expended on this matter as follows:

| Attorney | Hours | Rate | Fees Requested |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Kevin Kaplan (Partner at Coffey Burlington) | 31.1 | $625 | $19,437.50 |
| Dorothy Kafka (Associate at Coffey Burlington) | 45.2 | $300 | $13,560.00 |
| Howard Hogan (Partner at Gibson Dunn) | 110 | $700 | $77,000.00 |
| Christopher Kopp (Senior Associate at Gibson Dunn) | 40 | $450 | $18,000.00 |
| Laura Mumm (Senior Associate at Gibson Dunn) | 10.3 | $450 | $4,635.00 |
| Austin Donohue (Associate at Gibson Dunn) | 71.4 | $375 | $26,777.00 |
| **Total** | | | **$159,407.50** |

In light of counsel's experience and the prevailing market rates, I find that the proposed hourly rates listed above[4] are reasonable based on the facts and circumstances of this case. (*See* DE 54-2. Ex. J); *see also Domond v. PeopleNetwork APS*, 750 Fed. App'x 844, 848 (11th Cir. 2018) (finding $655 to be a reasonable rate in Miami for trademark litigation services). And upon review of the detailed billing records submitted by Defendants, I conclude that the attorneys at Coffey Burlington and Gibson Dunn exercised sound billing judgment. (*See* DE 54-2 Ex. K, L). Therefore, I conclude that the amount of attorneys' fees requested is reasonable.

Defendants also seek to recover their expert fees expended in this matter. Both attorneys' fees and expert fees are appropriate sanctions under § 1927. *See Wachovia Bank v. Tien*, 406 F.

---

[4] I note that the rates of the Gibson Dunn attorneys have been discounted 30–56% percent from the firm's customary rates actually charged to the client, which I find further supports their reasonableness.

App'x 378, 383 (11th Cir. 2010); *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998). Those fees are broken down as follows:

| Expert | Hours | Rate | Fees Requested |
|---|---|---|---|
| Richard Kreider | 49.25 | $595 | $29,303.75 |
| Ron Goodstein | 25 | $800 | $20,000.00 |
| Andrew Bernstein | 4.7 | $525 | $2,467.50 |
| Nichole Zakowicz | 8.2 | $525 | $4,305.00 |
| Graham Rogers | 1.5 | $580 | $870.00 |
| Basil Englis | 29.67 | $750 | $22,252.50 |
| Mary Borrowman | 28.67 | $375 | $10,751.25 |
| **Total** | | | $89,950.00 |

The fees requested by Defendants are supported by the invoices they have attached to their Motion. (*See* DE 54-2 at Exs. M–P). Thus, I find that they are reasonable.

### III.   Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

(1) Defendants' Motion for Sanctions and Fees (DE 54) is **GRANTED**.

(2) Defendants are **AWARDED** their reasonable attorneys' and experts' fees in the amount of **$249,357.50**. This amount is entered against Plaintiff's counsel.

(3) An Order converting the dismissal of this matter from a dismissal without prejudice to a dismissal with prejudice will be entered separately.

**SIGNED** in Chambers at West Palm Beach, Florida, this 18 day of July, 2022.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:   Counsel of Record