UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-80740-MIDDLEBROOKS

CELSIUS HOLDINGS, INC.,

    Plaintiff,

vs.

A SHOC BEVERAGE, LLC, et al.

    Defendants.
_____/

**SRIPLAW'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF AMENDED JUDGMENT (ECF 103)**

Joel B. Rothman ("Rothman"), Craig A. Wirth ("Wirth"), and SRIPLAW, P.A. ("SRIP") (Collectively Rothman, Wirth, and SRIP are "Sriplaw), oppose Defendants' Motion for Entry of Amended Judgment ("Motion") and state:

**I.    INTRODUCTION**

In their motion, Defendants seek "fees and expenses that . . . relat[e] to the bad faith discovery responses . . ." and "the expert fees and expenses incurred after the bad faith expert witness disclosure." (ECF 103 at 3). Defendants also seek "additional fees it [sic] incurred, following the filing of its Motion in November of 2021 (DE 54), and the issuance of the Court's Order in July of 2022 (DE 66), including the time incurred in connection with the hearing on May 12, 2022." (ECF 103 at 2).

The majority of the fees sought by defendants, if awarded, would violate the mandate rule. The Eleventh Circuit's mandate only authorized the imposition of sanctions for "dragg[ing] out discovery with frivolous objections." (ECF 98 at 20). The mandate did not include sanctions for

1

all of Celsius's alleged "bad faith" conduct. The mandate did not include sanctions for "bad faith expert witness disclosure" nor did it include sanctions for "fees on fees." The mandate did not include fees for the defendants' own discovery responses nor did it include fees for defendants' own expert witness disclosures. In short, the appropriate fee award to defendants is $19,546.50.

Even assuming that the "bad faith conduct" that multiplied the proceedings includes both the "bad faith discovery responses" and Celsius' expert witness disclosures that defendants moved to strike, the total amount of fees awarded should only cover the fees defendants incurred in filing motions to compel and to strike Celsius's expert witnesses. The total amount of those fees are no more than $34,229.50 - excluding block billed fees that cannot be interpreted and should not be allowed.

## II. FACTS CONCERNING DEFENDANTS' FEE CLAIMS ON REMAND

1.  Defendants seek "fees and expenses that . . . relat[e] to the bad faith discovery responses," and "the expert fees and expenses incurred after the bad faith expert witness disclosure." (ECF 103 at 3). Defendants also seek "additional fees it incurred, following the filing of its Motion in November of 2021 (DE 54), and the issuance of the Court's Order in July of 2022 (DE 66), including the time incurred in connection with the hearing on May 12, 2022." (ECF 103 at 2).

### A. Block Billing

2.  There is a significant amount of block billing in the defendants' attorneys' time entries. The issue of the defendants' attorneys' time for both the issue of Celsius's "bad faith discovery responses" and Celsius's "bad faith expert witness disclosure" cannot be easily determined because of the block billing. The defendants engage in block billing throughout their time entries.

3. For example, On August 12, 2021, Mr. Hogan logs 2.7 hours for "*Communications regarding damages expert*; **communications with Celsius counsel regarding expert issues, objections to discovery**; *review updated survey questionnaire; communications with survey experts regarding same.*" The italicized portions of the entry cannot be compensable because they concern the defendants' experts, either damages or survey experts. The bolded portion could be compensable because it could relate to either Celsius's "bad faith discovery responses" or Celsius's alleged "bad faith expert witness disclosure" but because of the defendants' block billing the Court cannot determine what amount of time related to the potentially compensable portions and what time related to the non-compensable portions.

4. Mr. Rothman provided with his declaration an annotated version of the defendants' bills using pink highlighting to show all the block billing entries that suffer from this defect and that prevented SRIPLAW from determining the precise amounts attributable to Celsius's "bad faith discovery responses" or Celsius's alleged "bad faith expert witness disclosure." Those block billed amounts should be excluded.

### B. Fees for Celsius's "Bad Faith Discovery Responses."

5. With respect to the issue of Celsius's "bad faith discovery responses," defendants indicate that they removed entries for fees (highlighted in yellow in ECF 103) "related to the review and drafting of A SHOC's discovery requests and A SHOC's responses to Plaintiff's discovery requests." However, the time entries submitted reflect far more than the narrow issue of Celsius' "bad faith discovery responses."

6. A SHOC's 87 first requests for production were served June 18, 2021 ("RFP"), and Celsius's responses and objections were served **August 2, 2021**. (Exhibit A - Rothman Decl. ¶ 20, ECF 54-1 at Exhibit G). A SHOC's first interrogatories were served July 14, 2021 ("ROGS"), and Celsius' answers and objections were served August 13, 2021. (Rothman Decl. ¶

20, ECF 54-2 at Exhibit D). A SHOC's 184 first requests for admission were served July 14, 2021 ("RFA"), and Celsius's responses and objections were served August 13, 2021. (Rothman Decl. ¶ 20, ECF 54-1 at Exhibit E).

7. Defendants' motion to compel production directed to the RFP was filed August 24, 2021. (ECF 34). The motion to compel RFP production contained a Rule 7.1 certificate of compliance that said "The conferral included a letter sent to Plaintiff's counsel on July 26, 2021 (attached as Exhibit "C") and another letter sent on August 9, 2021 (attached as Exhibit "D" hereto), followed by a telephonic meet and confer on August 17, 2021." (ECF 34 at 17). The July 26th letter is less than three pages long and filed at ECF 34-3, and the August 9th letter is four pages long and filed at ECF 34-4.

8. Defendants' motion to compel answers to RFA and ROGS was filed at ECF 35 on August 24, 2021. The motion to compel RFA and ROGS production contained a Rule 7.1 certificate of compliance that copied the one from the prior motion (in ECF 34) and referenced the wrong exhibits. The correct exhibits were a July 26, 2021 letter and an August 16, 2021 letter. The July 26th letter is less than three pages long and filed at ECF 35-5, and the August 16th letter is three pages long and filed at ECF 35-6.

9. Concerning the attorney time that the defendants seek to recover[1] for Celsius's "bad faith discovery responses," there should be no time awarded prior to August 2, 2021. August 2, 2021 is the date that Celsius' RFP responses and objections were served. If the "bad faith discovery responses" were vexatious or multiplied the proceedings, then the behavior *could not have*

---

[1] Mr. Hogan's declaration at ECF 103-1 indicates that "[t]he portions highlighted in yellow on the attached copy indicate those entries that have been removed for purposes of recalculating the proper award amount." Therefore, the Court can ignore those entries in yellow.

4

*predated Celsius' RFP responses.* The time entries provided by the defendants include numerous entries concerning discovery issues and conferrals on discovery before August 2, 2021.

10. The time entries submitted for the defendants from before August 2nd do not concern discovery from Celsius, but rather Celsius' attempts to resolve discovery disputes concerning Celsius's First Request for Production of Documents dated June 18, 2021. Mr. Rothman's letter to counsel for A SHOC concerning the defendants' objections to forty-seven of the forty-eight Requests for Production served by Celsius explains these issues. (Rothman Decl. Ex. 7). On July 19, 2021, Mr. Hogan logs time for "Communications with counsel for plaintiffs regarding meet and confer call." That time does not concern any "bad faith discovery responses" of Celsius. Rather, that time concerns Celsius' discovery requests to defendants and defendants' objections.

11. Mr. Kaplan logs time on July 19, 2021 for "Emails with co-counsel on discovery conferral" and on July 22, 2021 for "[e]mails with counsel and team on discovery issues; call with Mr. Hogan." Again, these entries cannot pertain to any "bad faith discovery responses" of Celsius. Rather, that time concerns Celsius' discovery requests to defendants and defendants' objections.

12. Mr. Rothman illustrates his declaration showing arrows where time entries relate to Celsius' discovery requests to defendants and defendants' objections that should be excluded. None of the entries relate to discovery to Celsius because they all predate August 2, 2021, the date that Celsius' RFP responses and objections were served. August 2, 2021 is the earliest date Celsius served responses to discovery. Mr. Rothman's declaration indicates that the time related to any "bad faith discovery responses" of Celsius should relate to the preparation and filing of the motions to compel Celsius filed at ECF 34 and ECF 35, and the defendants' reply filed at ECF 45. The total

5

amount of attorneys' fees claimed by defendants that relate to the motions and reply is $.$19,546.50. SRIPLAW proposes that this amount should be awarded to defendants.

### C. Fees Incurred "After the Bad Faith Expert Witness Disclosure"

13. The attorneys' fees bills submitted include numerous entries that relate to the defendants' expert disclosures that have nothing to do with Celsius's alleged "bad faith expert witness disclosure." According to the attorney time submitted, the defendants seek recovery of a significant amount of time to preparing the defendants' expert disclosures. Defendants are not entitled to compensation for their own expert disclosures required by this Court's scheduling order.

14. The scheduling order in this case (ECF 20) set a deadline for plaintiff's expert witness disclosures of August 9, 2021, and defendants' expert witness disclosures of September 7, 2021. Celsius disclosed its expert witnesses timely on August 9, 2021. Defendants time logs contain entries relating to expert witnesses that predate August 9, 2021. That time is not compensable.

15. For example, Ms. Mumm logged .8 hours on July 23, 2021 for "conduct[ing] legal research for potential survey experts." That time could not possibly relate to Celsius's alleged "bad faith expert witness disclosure" because it predated the disclosure by several weeks. Similarly, Mr. Hogan logs a total of 1.2 hours on July 25, 2021 for "Review and revise draft response to Celsius discovery letters; communications with potential survey experts." Again, that "potential survey expert" time could not possibly relate to Celsius's alleged "bad faith expert witness disclosure" because it predated the disclosure by several weeks. On the Coffey Burlington bill, Mr. Kaplan logs .6 hours on August 4, 2021 for "[e]mails with team and counsel re discovery and experts."

16. Time for "experts" could not possibly relate to Celsius's alleged "bad faith expert witness disclosure" because it predated the disclosure by five days. Defendants' experts disclosed were caffeine expert Richard B. Kreider (Rothman Decl. Ex. 8); survey expert Ronald C.

6

Goodstein (Rothman Decl. Ex. 9); damages expert Andrew C. Bernstein. (Rothman Decl. Ex. 10). The time claimed for the attorneys interacting with or working with these experts has nothing to do with Celsius' alleged "bad faith expert witness disclosure." Defendants' expert Goodstein was performing his own survey, while Celsius' survey expert Ralph Blessing had not yet performed his survey but had instead proposed a survey he was going to conduct. (Blessing materials at Rothman Decl. Ex. 11). As a result, entries concerning "trademark survey" or "confusion survey" or "results of confusion survey" cannot relate to plaintiff's expert and can only relate to defendants' expert.

17.     Celsius did not disclose a damages expert and advised counsel for defendants that Celsius was not seeking damages, but only injunctive relief. Therefore, references to damages experts have nothing to do with Celsius's alleged "bad faith expert witness disclosure," and can only relate to defendants' expert. Celsius' second expert, Chris Lockwood, was not proposed as a "caffeine expert" like defendants' expert Kreidler, but rather was proposed as an expert on misbranding under the Food, Drug & Cosmetics Act. (Lockwood materials at Rothman Decl. Ex. 12).

### III.     MEMORANDUM OF LAW

#### A. Defendants' Motion Violates the Mandate Rule and Disregards the Eleventh's Circuit's Mandate.

"Under the mandate rule, which is a specific application of the law of the case doctrine, a district court acting under an appellate court's mandate, 'cannot vary it, or examine it for any other purpose than execution,' or provide any 'other or further relief.'" *United States v. Gonzalez*, No. 25-10986, 2025 U.S. App. LEXIS 18784, at *3 (11th Cir. July 29, 2025) quoting *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018). Instead, the district court "must enter an

7

order in strict compliance with the mandate." *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985).

"The law of the case doctrine and the mandate rule ban courts from revisiting matters decided expressly or by necessary implication in an earlier appeal of the same case." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.,* 579 F.3d 1268, 1270-71 (11th Cir. 2009). It has its greatest force when a case is on remand to the district court. "When an appellate court issues a clear and precise mandate, . . . the district court is obligated to follow the instruction. Neither the district court nor any party is free to ignore the law of the case." *Litman v. Mass. Mut. Life Ins. Co.,* 825 F.2d 1506, 1516 (11th Cir. 1987). "A district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id*. at 1510-11 (quotation marks omitted).

Defendants blatantly ignore the Eleventh Circuit's Mandate,[2] and ask this Court to enter an "amended judgment" awarding defendants $243,891.84 under 28 U.S.C. § 1927, and amount that approximately equals the amount that was vacated by the Eleventh Circuit on appeal. ECF 103; ECF 103-1. The defendants' request violates the mandate rule. Violating the mandate rule will result in a second appeal and a reversal without justification. See *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018)(Reversing in second appeal "where the attorneys representing one side successfully urged the district court to act contrary to our mandate.")

---

[2] The mandate issued November 13, 2025 in Case No.: 22-12687 in the United States Court of Appeals for the Eleventh Circuit will be referred to as "Mandate."

The Eleventh Circuit said on page 20 of its decision:

> The district court during the hearing and in its order awarding sanctions focused on both the merits of Celsius' complaint and its conduct during discovery. The court did emphasize the multiple requests for extensions to produce discovery, the failure to respond to the most basic facts concerning the basis for its claims, and the meet and confer sessions which yielded no results but cost A SHOC attorney time, only for Celsius to voluntarily dismiss its lawsuit. However, the court also characterized A SHOC's motion for sanctions as being based on Celsius' decision to bring "claims with no basis in law or fact." The record supports a finding, and the imposition of sanctions for, "dragg[ing] out discovery with frivolous objections"—which Celsius repeated over the course of the litigation and which caused A SHOC to engage in discovery behavior and incur fees it could have avoided, *see Peterson*, 124 F.3d at 1396. Nevertheless, the court's ruling does not sufficiently separate out which behavior—the filing of the complaint or the discovery conduct—that the award covers. Instead, it appears that the court conflated the possible Rule 11 bad faith filing of the complaint with the Section 1927 standard for multiplying the proceedings. For this reason, we vacate the district court's award and remand the case with instructions that the court recalculate it.

(ECF 98 at 20).

Defendants did not heed the Eleventh Circuit's mandate, and simply refiled their prior fee calculation. The Eleventh Circuit held that a § 1927 award requires a "financial nexus." In other words there must be a "but for" direct causal link between specific conduct that would not have multiplied proceedings *but for* that conduct and that the excess fees reasonably incurred harm would not have been incurred *but for* the multiplied proceedings.

> Three conditions must be met before a court may impose Section 1927 sanctions: first, the attorney "must engage in 'unreasonable and vexatious' conduct;" second, that conduct must "multipl[y] the proceedings;" and third "the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (quoting 28 U.S.C. § 1927). The first requirement, that the attorney acted "unreason ably and vexatiously," is equal to a showing of bad faith, which is more than mere negligence. *Amlong*, 500 F.3d at 1239, 1241–42. Courts employ an objective standard when considering whether an attorney's conduct reaches the level of bad faith and find bad faith if an attorney "knowingly or recklessly pursues a

9

> frivolous claim" or "needlessly obstruct[s] the ligation of a non-frivolous claim." *Id*. at 1242 (emphasis omitted) (quoting *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003)).

(ECF 98 at 13).

Defendants' motion disregards the Mandate. Defendants claim billed time that predates defendants' own claimed trigger date, August 2, 2021. Defendants claim time that has nothing to do with defendants' "fees and expenses that . . . relat[e] to the bad faith discovery responses," or "the expert fees and expenses incurred after the bad faith expert witness disclosure." The Eleventh Circuit rejected the defendants' prior approach that treated all post–motion-to-dismiss fees as multiplied proceedings. It held that multiplication depends on what proceedings could have been avoided but for the bad-faith conduct.

This Court's award must be limited to the mandate which means only excess fees and expenses caused by bad-faith discovery conduct that actually multiplied the district-court proceedings. SRIPLAW has proposed an amount that is precisely limited as required by the mandate. That is the amount that can be awarded, nothing more.

### B. The Majority of Defendants' Fees do not Satisfy the Financial Nexus Requirement.

#### 1. Defendants' Claims for Discovery Related Fees that Predate August 2, 2021 Should be Disallowed

Section 1927 authorizes sanctions only for "excess costs, expenses, and attorneys' fees reasonably incurred because of" sanctionable conduct. The Eleventh Circuit reiterated that § 1927 requires: (1) unreasonable and vexatious conduct (bad faith); (2) conduct that multiplies proceedings; and (3) an award that bears a financial nexus to the excess proceedings.

Defendants claim they recalculated the award to cover fees relating to bad faith discovery responses beginning August 2, 2021. (Motion; Hogan Decl.). However, Defendants' legal invoices contain substantial entries dated before August 2, 2021. For example, the Gibson Dunn "Amount

10

Claimed" table includes entries in June and July 2021. ECF 103-1 at Ex. B. Coffey Burlington invoices likewise include July 2021 entries. ECF 103-1 at Ex. A.

There can be no "excess" fees caused by alleged bad-faith discovery responses before those discovery responses existed. Celsius served its RFP responses/objections on August 2, 2021. Defendants' motion cannot treat pre–August 2 work as resulting from August 2 responses. (Exhibit A - Rothman Decl.; ECF 103-1 at Exs A, B.)

Discovery conferrals that took place prior to August 2, 2021 related to discovery propounded to Defendants (who objected to every request for production except for one) and would have taken place regardless of the content of Celsius' discovery responses. Defendants are not entitled to fees incurred prior to August 2, 2021.

### 2. Defendants' Claims for Fees Related to Defendants' Own Experts Should be Disallowed.

Defendants seek attorneys' fees that they claim concern expert issues on the theory that Celsius' August 9, 2021 expert disclosures were non-compliant. (Motion; ECF 103-1). However, the Mandate of the Eleventh Circuit does not require payment of any fees related to expert discovery. The Eleventh Circuit stated:

> A closer look at Celsius' discovery responses also is informative of what supported the district court's conclusion. The over 80 requests for production that Celsius objected to were requests for documents supporting the contentions made in its complaint, and even cited the relevant paragraphs of the complaint. Yet, Celsius argued that these requests were "overly broad, vague, and ambiguous." Of the 162 objected-to requests for admissions, some simply asked Celsius to admit the colors and lettering on an image of an energy drink. Celsius claimed these requests were "not relevant to any claim or defense" even though it alleged a claim for trade dress infringement. Further, it answered none of the 12 interrogatories, even one asking it to "describe in detail the factual basis" for consumer confusion alleged in its complaint. Based on these facts, the district court found that Celsius did not meaning fully participate in discovery and its conduct was unreasonable and vexatious. Although the district court did not cite to Celsius' expert witness disclosures in its sanctions order, those disclosures also highlight the deficiencies in Celsius'

> discovery responses. Instead of producing a report evidencing the consumer confusion for the trade dress infringement claim that it raised, Celsius produced a contract for a study that was not yet completed.

(ECF 98 at 17-18).

The passage above supports the Eleventh Circuit's conclusion that this court's determination that Celsius did not meaningfully participate in discovery and its conduct was unreasonable and vexatious was not clearly erroneous. However, the Eleventh Circuit did not say that conduct that was unreasonable and vexatious concerned "the expert fees and expenses incurred after the bad faith expert witness disclosure" like defendants claim. To the contrary, the Eleventh Circuit's mandate was far more limited.

> For purposes of determining whether Celsius needlessly multiplied the proceedings, we look to what actions during the litigation could have been avoided but for the attorney's bad faith conduct. In this case, the district court should have focused on Celsius' behavior during discovery, not on whether the complaint itself was frivolous. The entire lawsuit lasted for about five months which, in the grand scheme of litigation between two high-profile consumer products companies, perhaps is not a long amount of time. However, Celsius' conduct during that relatively short period, specifically during discovery, extended the lawsuit longer than necessary in the district court's view. Like its finding of bad faith, we review its finding of multiplicity for clear error. *See Peterson*, 124 F.3d at 1396 (concluding the district court's "factfinding" regarding multiplicity to be "clearly erroneous").

(ECF 98 at 19-20).

The passage above confirms that the Eleventh Circuit was focused on "Celsius' conduct during that relatively short period, specifically during discovery, extended the lawsuit longer than necessary in the district court's view." That conduct was unrelated to expert disclosures from defendants, and arguably it was also unrelated to expert disclosures by plaintiff. Furter evidencing the invalidity of many of these charges, much of this interaction began before August 9, 2021, including mid to late July time entries reflecting expert scouting, survey discussions, and expert communications. (ECF 103-1at Ex. B; Rothman Decl.) In addition to the pre-August 9, 2021 date

12

issue, Defendants' attempts to recover fees for interaction with their own experts that would have occurred regardless of whether Sriplaw's conduct is improper.

As of August 9, 2021 there was an active survey engagement structure (Marketlab SOW effective August 9). Moreover, Lockwood's statement was served on August 9. (Rothman Decl. at Ex. 1).

However, rather than only seek fees related to review, analyzing, and challenging these disclosures, Defendants simply take great liberty to seek fees for anything remotely related to experts –interaction, expert search, consultation, and defensive survey-related work. Awarding defendants all their fees related to anything concerning experts would violate the mandate rule.

### 3. Defendants' Block Billed Entries Should be Disallowed

The Eleventh Circuit is clear regarding the problematic nature of block billing. *Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999) ("The imprecision of the billing records submitted by the plaintiffs makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in this litigation."). Here, the submitted invoices contain several confusing block-billed entries that make segregation impossible. At this point, it is the Defendants who are multiplying proceedings by making claims that they have been ordered to forego and doing so in an improper manner.

Even after August 2 and August 9, Defendants' claimed entries frequently combine multiple tasks in single time entries, including regular course of litigation work (expert development, survey design, litigation strategy) mixed with discovery conferral items. (ECF 103-1 at Exs. A–B; Rothman Decl.) Because § 1927 requires a financial nexus to the excess proceedings, Defendants must segregate compensable time from non-compensable time. Block billing that prevents allocation fails the mandate's requirement of a direct causal link between specific sanctionable conduct and specific excess fees. (Mandate; Rothman Decl.)

13

### 4. Awarding Defendants "Fees on Fees" Would Violate the Mandate Rule and § 1927.

Defendants seek $43,077.50 in *additional* fees incurred litigating the sanctions motion itself. Defendants add those amounts into the amended judgment request. (Motion; ECF 103-1 at Exs. C–D.) Defendants never sought these fees previously. The fees they seek now have no basis in § 1927, any other statute, and were never raised pursuant to the Local Rules.

Local Rule 7.3(a)(5)(A) requires that Motions for Attorneys Fees identify the timekeeper. To wit, "The motion [for attorneys' fees] shall . . . (5)(A) provide the identity, experience, and qualifications for each timekeeper for whom fees are sought . . ." Defendants have the burden to prove the amount of fees within the general law as limited by the Mandate. The fees sought on fees do not designate a timekeeper and were never part of any prior meet and confer process. Accordingly, **all of the additional $23,525 in time from Coffey Burlington may not be considered.** (ECF 103-1 at Ex. C).

Regarding the remaining $19,552.50 claimed for additional work by Gibson Dunn, the Mandate does not authorize an award for prosecuting the sanctions Motion. The Mandate is limited to the "recalculation of the amount of sanctions that related specifically to Celsius' sanctionable discovery conduct under Section 1927." (ECF 98 at 21). The mandate requires Defendants to identify proceedings that would not have occurred *but for* the sanctionable discovery conduct and to show the amounts sought were *reasonably incurred* because of those excess proceedings. Conclusory statements that the sanctions motion "had no purpose other than" addressing bad faith are not a substitute for entry-by-entry causation and segregation.

The original motion for sanctions never sought "fees on fees" as the defendants now claim. The motion concludes with a request that "the Court convert its dismissal of this action into a dismissal with prejudice and award A SHOC its reasonable attorneys' and expert fees of

14

$249,357.50." (ECF 54 at 20). Defendants never asked for "fees on fees" before and are limited now by the mandate that says nothing about an award of "fees on fees." Defendants could have asked for those fees before, but failed to do so, and may not do so now.[3]

Recall that the motion filed by defendants for attorneys' fees claimed fees "pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and 15 U.S.C. § 1117(a)." (ECF 54 at 1). After an eight page recitation of facts, defendants spent two pages arguing entitlement to a dismissal with prejudice (ECF 54 at 9-11), and the remaining nine pages on a combination of "bad faith" arguments seeking sanctions under the Lanham Act, the Court's inherent powers, or § 1927" **against Celsius.** (ECF 54 at 11-20). The § 1927 aspect of the sanctions motion was minor as it took up only a half-page of the defendants' argument. (ECF 54 at 11). Celsius's attorneys are never mentioned by name anywhere.

There is no segregation in the billing entries for chasing unnecessary theories as opposed to the rule under which fees were actually awarded. It is clear that Defendants moved under the Lanham Act, the court's inherent power, and § 1927. Further, within that context, Defendants' sanctions motion focused heavily on the fundamental merits of the case and was primarily premised on the theory that the case was frivolous from day one, a theory that was unproven by Defendants and rejected by the Eleventh Circuit. Based on the briefing, § 1927 a was third priority alternative theory.

Defendants did not provide a breakdown of the arguments presented and how those

---

[3] Defendants knew that they had a right to those fees because by the date of the hearing on the motion those fees had already been incurred. Defendants cited *Amlong v. Denny's, Inc*., 500 F.3d 1230, 1239 (11th Cir. 2007) in their motion (ECF 54 at 1) which was the prior appeal of *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1299 (11th Cir. 2010), which was an appeal of the district court's § 1927 sanctions order that included "fees on fees." Defendants knew they could seek fees on fees under § 1927 but instead chose not to.

15

arguments directly related to discovery issues. Most of the time invested in the sanctions motion was spent chasing theories that were not effective. This Court decided that § 1927 was the basis of the award. There is very little mention of § 1927 in the sanctions motion and zero allegations as to what Sriplaw specifically did wrong as differentiated from Celsius. At best the § 1927 theory was only mentioned in passing and as § 1927 is the ultimate basis of the award, only a fraction of the original claim survived.

Defendants do not delineate time spent calculating irrelevant time based on unadjudicated theories in the sanctions Motion. While this Court found § 1927 to be the proper basis for the sanction award, the original Motion was, in effect, a deficient, and (ultimately) unsuccessful Rule 11 Motion. Defendants should not be rewarded for the folly of their theory by recovering fees for prosecuting a Motion where most of the time was clearly spent on unnecessary theories.

### 5. Proper Calculations.

If this Court wishes to award *any* amount to Defendants, the proper amount is **$19,545.50[4].** See Exhibit B – Dial Declaration. Defendants are not entitled to fees for prosecution of the sanctions Motion itself, for improper block billing, for talking to their experts, for conferring about discovery where Defendants mounted frivolous objections, or for any other activity that does not meet acknowledged compensable billing activity and that was the direct result of multiplication of proceedings caused by the conduct of Sriplaw.

### C. Conclusion

Sriplaw respectfully requests that the Court deny Defendants' Motion for Entry of Amended Judgment (ECF 103) because it fails to comply with the Eleventh Circuit's mandate requiring a causal financial nexus to excess proceedings for the overwhelming majority of the

---

[4] Sriplaw concedes that *if* the Court believes the mandate authorizes fees related to improper expert disclosures, then defendants are entitled to $34,229.50. *Id.*

claimed fees. In the alternative, Defendants should be awarded **$19,545.50.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2026, a true and correct copy of the foregoing was served to all counsel of record via CM/ECF.

**ZINOBER DIANA & MONTEVERDE, P.A.**

*/s/ Avery A. Dial*
**Avery A. Dial, Esq.**
Florida Bar No.: 732036
Counsel for Joel B. Rothman, Craig A. Wirth, and SRIPLAW, P.A.
2400 E. Commercial Blvd., Suite 420
Fort Lauderdale, FL 33308
Phone: (954) 256-9288
Fax: (727) 498-8902
Emails: Avery@zinoberdiana.com
Dloris@zinoberdiana.com