UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:  9:21-cv-80740-DMM-WM

CELSIUS HOLDINGS, INC.,

    Plaintiff,

v.

A SHOC BEVERAGE, LLC and
KEURIG DR PEPPER, INC.,

    Defendants.

**DEFENDANTS' REPLY TO SRIPLAW'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF AMENDED JUDGMENT**

Defendants A SCHOC BEVERAGE, LLC and KEURIG DR PEPPER, INC, hereby reply to the Response in Opposition, D.E. 113, to Defendants' Motion for Entry of Amended Judgment, D.E. 103, filed by Joel B Rothman, Craig A. Wirth, and SRIPLAW, P.A. (collectively "Sriplaw"), on January 6, 2026, and state the following:

**I. Introduction**

Sriplaw's Response mischaracterizes the Eleventh Circuit's mandate in an attempt to artificially reduce the recalculated judgment amount by almost ninety percent of the proper figure. The mandate was clear: "[t]he revised award should reflect costs in an amount that reflects only the bad faith conduct that multiplied district court proceedings." Appellate Doc. 64-1 at 21; 2025 WL 2887300 (11th Cir. Oct. 10. 2025) (hereinafter the "Opinion"). Defendants are entitled to "the excess fees and expenses they incurred as a result of Sriplaw's bad faith conduct during discovery," including bad faith conduct other than Sriplaw's frivolous objections. Opinion at 21. Sriplaw now attempts to suggest that the Eleventh Circuit's failure to itemize every genre of fee or expense to

1

which Defendants are entitled somehow forecloses Defendants' entitlement; not so. Rather, the determination of which fees fall into the bucket of "excess fees and expenses [] incurred as a result of Sriplaw's bad faith conduct during discovery" and which do not is precisely the determination that the Eleventh circuit charged this Court to make on remand.

In making that determination, this Court is not arbitrarily limited only to Sriplaw's bad faith discovery objections, and it is not limited only to looking forward from the date of the formal service of those objections. Indeed, Sriplaw wrongly attempts to reduce the judgment amount by entirely mischaracterizing the timeline of the ongoing communications between counsel concerning Sriplaw's deficient discovery responses, which commenced weeks prior to service of Celsius' improper objections on August 2, 2021. This is exactly the type of deliberate misconduct that resulted in the Eleventh Circuit's finding of bad faith to begin with. The details and timing of the extensive, and entirely unnecessary, conferral process prior to service of Sriplaw's responses, is detailed below.

Viewed against the reality of the extended conferral process and litigation that was required to address Sriplaw's discovery misconduct, the financial nexus between the fees sought by Defendants and the extensive, bad faith conduct of Sriplaw during discovery is well established. Instead, it is Sriplaw that seeks to ignore the mandate, by objecting for the first time to various fee entries of Defense counsel as "block-billing," an issue not raised by Sriplaw in response to the underlying motion or on appeal. Accordingly, that argument is waived.

## II. The Time Line

Sriplaw's attempt to cut off fees and expenses incurred prior to August 2, 2021, is entirely misplaced. After Defendants served their initial requests for production and for admission on June 18 and July 14, 2021, Mr. Rothman emailed Defendants' counsel on July 16, 2021, stating that he

was going to seek a protective order regarding Defendants' requests. *See Supplemental Declaratoin of Kevin C. Kaplan* ("Kaplan Decl."), ¶ 2, filed herewith. The email further requested an immediate meet and confer to address those issues. Accordingly, a meet and confer was scheduled for July 22, 2021, but rescheduled by Mr. Rothman for the following day, on July 23, 2021. As well, Mr. Rothman sent a lengthy letter on July 22, 2021, detailing his bad-faith refusal to respond to Defendant's RFA's – which is a central element supporting the Eleventh Circuit's ruling. *Id.* ¶ 3.

As reflected by the billing records, a marathon meet and confer session was then held on August 23, 2021, and Sriplaw requested an enlargement of time to serve their objections to the RFP's. Counsel for Defendants also responded in writing in the interim, by letter dated July 26, 2021, addressing Sriplaw's baseless position on the RFA's. As this sequence of events demonstrates, Sriplaw had made clear that it intended to obfuscate discovery weeks before the service of their initial responses on August 2, 2021. Defendants had already incurred significant time addressing Sriplaw's communications in an exchange of letters and during a lengthy meet and confer, and preparing to address the unwarranted objections Sriplaw had made clear were forthcoming. *Id.* ¶¶ 2-4.

Notably, on August 3, 2021, Sriplaw also requested an extension of expert deadlines, knowing full well they were not going to meet the deadlines, and had not prepared sufficient expert disclosures. That conduct also forced Defendants to incur fees and costs, as detailed in their Motion. *Id.* ¶¶ 5-6.

Sriplaw's Response, supported by Mr. Rothman's Declaration, entirely ignores these events prior to August 2, 2021, and mischaracterizes the time line in support of a baseless attempt

3

to limit sanctions, further highlights the underlying misconduct that led to an award of sanctions in the first place.

### III. <u>Argument</u>

#### A. Mandate Rule

Sriplaw, and not Defendants, attempt to violate the Mandate Rule. The Eleventh Circuit's Opinion broadly found bad faith on the part of Sriplaw in the course of discovery, noting its representation of Plaintiff at all points in the discovery process including pre-response conferrals as well as the expert disclosures. Opinion at 16-18. ("Sriplaw represented Celsius through the entire discovery process," "extensions and meet and confer sessions… did not yield any positive outcomes," and "Celsius' expert witness disclosures… also highlight the deficiencies in Celsius' discovery responses.").

The mandate to revise the award so that it "reflects only the bad faith conduct that multiplied district court proceedings" is focused squarely on whether those aspects of the proceedings were multiplied, the Eleventh Circuit having found discovery was permeated by various examples of Sriplaw's bad faith conduct. The mandate then instructs this Court that it should award the fees resulting from any multiplication of the district court proceedings due to Sriplaw's bad faith throughout the discovery process. The distinction drawn by the Opinion, and the stated basis for remand, was to ensure that any fees and expenses not related to that broad category of "discovery" conduct are not included in the sanctions award. Specifically, that includes fees related to the motion to dismiss briefing, or other merits-based litigation.

Accordingly, consistent with that ruling, Defendants removed certain billings prior to the conduct of discovery in the case, focusing on the multiplication of discovery proceedings as a

4

result of Sriplaw's ongoing strategy of bad faith obfuscation. The timeline related to that misconduct is set forth in detail above.

Sriplaw's position, in contrast, is inconsistent with the mandate. It seeks to impose an artificial cutoff date, eliminating any fees incurred prior to the service of objections to the RFAs on August 2, 2021. Nothing in the Eleventh Circuit's Opinion, or the reality of what occurred, supports that.

As well, as discussed in more detail below, Sriplaw's attempt to raise new arguments, for the first time after remand, such as its argument against block-billing, is barred by the mandate rule.

**B. The Financial Nexus Requirement Is Satisfied.**

Defendants agree that the award must bear a financial nexus to the proceedings multiplied by bad faith conduct. That nexus is clearly satisfied here, where Defendants' have limited the fees they seek to recover only to those relating to the discovery stage of the litigation, the period permeated with and multiplied by Sriplaw's consistent bad faith strategy. "The essential goal" in fashioning a compensatory sanction is "to do rough justice, not to achieve auditing perfection." *In re Engle Cases*, 283 F.Supp.3d 1174, 1253 (M.D. Fla. 2017) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "[T]he but-for standard even allows a court to shift all of the costs 'from either the start or some midpoint of a suit, in one fell swoop.'" *Id*. at 1252 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017)).

   1. *No August 2, 2021 Cut-Off Should Apply.*

The fees now sought by Defendants are entirely consistent with these principles. Thus, Defendants have eliminated fees related to the preparation of their own discovery requests, and have focused on the fees incurred beginning on July 16, 2021, when Sriplaw and Mr. Rothman

5

made clear they intended to obfuscate discovery. Sriplaw's attempt to exclude any fees prior to the formal service of their baseless objections is misplaced, as detailed above.

### 2. *Fees Related To Defendants' Experts Are Warranted.*

Defendants' expert related fees also have a strong financial nexus to the bad faith expert conduct identified by the Eleventh Circuit. The Eleventh Circuit was clear that the expert disclosures further highlighted the bad faith occurring in the discovery process. Sriplaw itself acknowledges, as it must, that the Eleventh Circuit itself focused on Celsius' expert witness disclosures as "highlight[ing] the deficiencies in Celsius' discovery responses." The Eleventh Circuit emphasized that this was an element of bad faith, "[a]lthough the district court did not cite to [it] . . . ." Response at 11. Without any basis, though, Sriplaw suggests that the sanctionable discovery "conduct was unrelated to expert disclosures from defendant." *Id.* at 12. Sriplaw's suggestion is flatly inconsistent with the Eleventh Circuit's own holding, "highlight[ing]" the deficient expert disclosures as a basis for sanctions.

To the extent Sriplaw summarily argues that the expert fees claimed, which are recoverable, lack a sufficient nexus, the argument lacks supporting analysis, and ignores the fact that Defendants' Motion revised the requested expert fees to eliminate the scope of work prior to the improper, bad faith expert disclosures of Sriplaw. Not surprisingly, Sriplaw ignores the most obvious example, as demonstrated in the report of A SHOC's damages expert, Andrew Bernstein, who was forced to assess the record demonstrating Sriplaw's failure to "provide[] any information about its damages in discovery." Report at 6. On that basis, he opined "that there is no evidence that the Plaintiff has incurred any actual damages." *Id.* at 8. His analysis – although essentially an exercise in futility directly related to Sriplaw's bad faith conduct related to discovery and expert disclosures – required A SHOC to incur attorneys' fees and expert costs.

6

Nor does Sriplaw bother to analyze in any detail the work of A SHOC's other experts, who were also forced to spin wheels based on the deficient disclosures of the Plaintiff's counterpart experts, and the failure to provide discovery. All of those experts, including Richard Kreider, A SHOC's expert on energy drinks, and Ronald Goodstein, A SHOC's survey expert, were forced to incur time reviewing and responding to the deficiencies of Plaintiff's experts. Clearly, Sriplaw's fundamental non-compliance with its Rule 26 obligations to provide discovery and valid expert disclosures, as "highlighted" by the Eleventh Circuit, forced Defendants to incur significant fees and costs developing counter-experts.

### 3. *Block Billing Arguments Are Waived and Baseless.*

As a threshold matter, Sriplaw's block billing argument is foreclosed by the mandate rule because "a party cannot bypass the mandate rule by raising new arguments for the first time after remand." *Cote v. Philip Morris USA, Inc.*, 400 F.Supp.3d 1295, 1305 (M.D. Fla. 2019) (citing *United States v. Mesa*, 247 F.3d 1165, 1170-71 (11th Cir. 2001) (affirming a district court's refusal to consider a defendant's new argument raised for the first time at resentencing following remand)). Here, Sriplaw had ample opportunity to raise its block billing argument on appeal before the Eleventh Circuit with respect to the same billing entries it challenges now, but failed to do so. It has waived any challenge to block billing as a result. "[A] legal decision made at one stage of the litigation unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *United States v. Escobar–Urrego*, 110 F.3d 1556, 1561 (11th Cir.1997) (quoting *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 250 (D.C.Cir.1987)). Sriplaw encourages this court to reexamine the compensability issue under its new block billing theory, "[h]owever, where an appellate court remands for 'resolution of a narrow

7

factual issue,' the lower court may not circumvent the mandate by approaching the identical legal issue under an entirely new theory." *Barber v. Int'l Broth. Of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, District Lodge #57*, 841 F.2d 1067, 1070 (11th Cir. 1988) (quoting *Baumer v. United States*, 685 F.2d 1318, 1321 (11th Cir. 1982)). Sriplaw's argument goes against the Eleventh Circuit's mandate and should be disregarded.

The argument is misplaced in any event. Notably, the block billing Sriplaw identifies relates to mixed issues of discovery and expert witnesses. There is no basis for excluding those entries, however, since as Defendants addressed above, the fees and costs related to the experts are recoverable. For example, the entry identified by Sriplaw from August 12, 2021, for Mr. Hogan is challenged based on the inclusion of expert related billing resulting from Sriplaw's own bad faith misrepresentations surrounding its own experts during discovery.

Even as to that entry, Sriplaw concedes that the portions related to discovery objections would be compensable. As a result, Sriplaw's approach of simply removing any billing which it has unilaterally classified as block billing (including the August 12th entry) constitutes an intentional short-changing of Defendants in favor of the bad faith actor who forced Defendants litigation of these issues.

Nor are the claimed entries improper "block billing" in any event. The entries are "compensable because the entries contain enough detail to enable this Court to ascertain the work performed and because the amount of time expended on the tasks was reasonable." *Prison Legal News v. Inch*, 411 F.Supp.3d 1198, 1213 (N.D. Fla. 2019). A wholesale elimination of any alleged block billings, even if that argument were otherwise valid, is not warranted here. *See Zelaya v. Batholomai*, 2008 WL 11334123 at *6 (S.D. Fla. 2008) (reducing billed entries only by a flat

percentage, rather than eliminating them entirely; and noting that the Court may fashion the percentage reduction based on its own independent expertise).

### 4. *Fees on fees.*

Finally, Sriplaw challenges the recovery of fees related to the actual sanctions motion and the evidentiary hearing, which was the direct result and culmination of the bad faith discovery conduct. Sriplaw does not explain or provide authority for why those fees would not be available here. As Sriplaw itself recognizes, the "mandate requires Defendants to identify proceedings that would not have occurred *but for* the sanctionable discovery conduct and to show the amounts sought were *reasonably incurred* because of those excess proceedings." D.E. 113 at 14. That includes the fees incurred by Defendants in litigating the sanctions motion. The award of those fees is supported by established law. As the Eleventh Circuit has explained, "The plain language of 28 U.S.C. § 1927 establishes that, in making a sanctions award to a party, a court may include the costs, expenses, and attorneys' fees that the party victimized by the sanctionable conduct incurred in obtaining the award. 28 U.S.C. § 1927. After all, those costs are, in the statute's terms, incurred because of such conduct." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010) (quotation and citation omitted).

## IV. Conclusion

Defendants' expert fees as well as all fees related to the motion for sanctions are compensable under the Eleventh Circuit's mandate. The billing entries identified by Sriplaw as block billing are fully compensable under the Eleventh Circuit's mandate. Defendants maintain the proper adjusted award amount of this Court should be $243,891.84.

Dated: January 12, 2026                                         Respectfully submitted,

By: /s/ *Kevin C. Kaplan*
**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

-and-

By: /s/ *Howard S. Hogan*
**Howard S. Hogan, Esq.**
(admitted *pro hac vice*)
hhogan@gibsondunn.com
**Christopher F. Kopp, Esq.**
(admitted *pro hac vice*)
ckopp@gibsondunn.com
GIBSON, DUNN & CRUTCHER, LLP
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: (202) 955-8619
Facsimile: (202) 831-6033

*Counsel for Defendants A SHOC Beverage, LLC and KEURIG DR PEPPER INC.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on January 12, 2026, on all counsel or parties of record.

*/s/ Kevin C. Kaplan*
Kevin C. Kaplan