UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CV-80740-MIDDLEBROOKS

CELSIUS HOLDINGS, INC.,

    Plaintiff,

v.

A SHOC BEVERAGE, LLC,
and KEURIG DR PEPPER INC.,

    Defendants.
_____/

**ORDER ON MOTION FOR JUDGMENT**

THIS CAUSE comes before the Court upon the Defendants' Motion for Entry of Amended Judgment, filed on December 5, 2026. (DE 103). In accordance with my previous Order Setting Briefing Schedule (DE 106), Plaintiff filed its Response on January 6, 2026. (DE 113). Defendants filed their Reply on January 12, 2026. (DE 114). For the reasons stated, the Defendants' Motion is granted in part.

I.     BACKGROUND

On November 13, the United States Court of Appeals for the Eleventh Circuit issued an Order of Limited Remand affirming this Court's finding of bad faith and its decision to sanction Sriplaw but vacating the sanctions and fees award and remanding the case with instructions to recalculate the proper award amount pursuant to the requirements of Section 1927. (DE 98 at 6). I consequently ordered the Parties to file a Joint Status Report, directing them to include an agreed-upon amount in light of the Eleventh Circuit's mandate, or alternatively to brief the issue. (DE

1

102, DE 106). Unable to reach an agreement, the Parties have filed briefing. (DE 113, DE 114). Their submissions reflect core disagreements on the meaning of the Eleventh Circuit's opinion.

II.   SECTION 1927

The Court laid out the three conditions to be met before a district court may impose Section 1927 sanctions. First, the attorney must engage in "unreasonable and vexatious conduct;" second, that conduct must "multipl[y] the proceedings;" and third "the dollar amount of the sanction must bear a financial nexus to the excess proceedings." *Joel B. Rothman, et. al. v. A Shoc Beverage, LLC, et al*, 22-12687-HH. As it pertains to the multiplication of proceedings prong, we are to ask whether "the attorney's conduct results in proceedings that would not have been conducted otherwise." *Id.* (quoting *Peterson v BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). As the Court explained it, "[f]or purposes of determining whether Celsius needlessly multiplied the proceedings, we look to what actions during the litigation could have been avoided but for the attorney's bad faith conduct." *Joel B. Rothman, et. al. v. A Shoc Beverage, LLC, et al*, 22-12687-HH at 19.

In determining whether an attorney has engaged in bad faith, the Eleventh Circuit pointed to Federal Rule of Civil Procedure 26 as the "baseline" for determining good faith in the discovery context. Specifically, the Court stated that the Rule "imposes upon an attorney a duty to ensure that an objection to a discovery request is not 'interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *Joel B. Rothman, et. al. v. A Shoc Beverage, LLC, et al*, 22-12687-HH at 16 (quoting Fed. R. Civ. P. 26(g)(1)(B)(ii).

Although I need not revisit whether Sriplaw acted in bad faith, the central disagreement between the Parties involves the following question: At what point did the proceedings become ones that would not have been conducted otherwise? In other words, I must identify, within the

2

context of discovery, the point in time at which Sriplaw's bad faith created unnecessary actions in this litigation.

    III.    TIME-LINE

The various briefings provide a detailed outline of the relevant events: beginning with Defendants' Request for Production on June 18, 2021 through July 18, 2022, when I entered an Order granting the Defendants' Motion for Sanctions (DE 66). On **July 14, 2021**, the Defendants sent Plaintiff its Request for Admissions and its interrogatories. Two days later, on **July 16, 2021**, Plaintiff informed the Defendants that it would seek a protective order in light of the requests for admissions. (DE 115-2 at 8). On the same day, the Parties scheduled a Meet and Confer to review the "discovery issues" in the case, including both the Defendants' objections to Plaintiff's Requests for Production as well as the Defendants' Requests for Admissions and Production. (*Id.* at 8, 9). On **July 22, 2021**, counsel for Plaintiff sent a letter outlining its objections to Defendants' Requests for Admissions (*Id.* at 12). Soon after, on **July 23, 2021**, the Parties engaged in a Meet and Confer, where Plaintiff requested an extension of time to serve its objections to the Defendant's Request for Production. **On July 26, 2021**, Defendants sent Plaintiff a letter responding, "to the various issues ... raise[ed] in the letters and during ... [the] conference." (115-4 at 2). On **August 2, 2021**, Plaintiff served its initial response to the Defendants' Request for Production, and on **August 3, 2021**, Plaintiff requested an extension of expert deadlines. (DE 114 at 3). Defendants disclosed their experts on **August 9, 2021**. (DE 113 at 6). On **August 13, 2021**, Plaintiff served its responses to the interrogatories and Requests for Admissions. Soon after receiving its mountain of objections, Defendants sent Plaintiff a letter on **August 16, 2021**, stating that – as it had explained in the July letter and conference – Plaintiff's objections are frivolous on their face. (DE 35-6 at 1). The Parties

3

soon held one last Meet and Confer on **August 17, 2021**, before Defendants moved to compel production on **August 24, 2021**. (DE 34).

On **September 14, 2021**, the Plaintiff voluntarily withdrew its Complaint. (DE 50). And on **November 5, 2021**, Defendants moved for sanctions. (DE 54).

IV.   DISCUSSION

Each Party has proposed their own costs, predicated on their respective views regarding what actions fit within the Eleventh Circuit's mandate. Defendants propose an amount of $243,891.84. To arrive at this figure, Defendants point to various unnecessary acts and the preparation preceding them: their Motion to Exclude Testimony, its Motions to Compel, and the communications with Plaintiff prior to its formal objections when Plaintiff intimated it would seek a protective order. Defendant also seeks costs as it relates to its Motion for Sanctions. (DE 103 at 2). Plaintiff, however, first contends that if the bad faith discovery responses were vexatious or multiplied the proceedings, then the behavior could not have predated Plaintiff's Request for Production responses. (DE 113 at 4, 5). Second, Plaintiff argues that portions of the associated expert costs could not relate to the bad faith expert disclosure. (*Id.* at 6). Third, Plaintiff challenges the "Fees on Fees," *i.e.*, the additional fees incurred litigating the sanctions motion itself. (*Id.* at 14). All of this excluded, Plaintiff suggests that the real fee is $19,545.50. (*Id.* at 16).

In my view, the clearest evidence of multiplied and unnecessary proceedings began, when Defendants began working on their letter responding, "to the various issues ... raise[ed] in the letters and during ... [the] conference." (115-4 at 2). Events before that were either a natural part of the discovery process, such as the initial requests, or too muddled with Defendants' objections to Plaintiff's Requests. Therefore, any relevant work expended beginning on July 26, 2021, shall be considered for purposes of multiplied proceedings.

4

As it pertains to relief for the time expended pursuing the Motion for Sanctions, I find that allowing such costs is entirely consistent with the Eleventh Circuit's mandate. As stated earlier, the Eleventh Circuit has instructed courts that we are to ask whether "the attorney's conduct results in proceedings that would not have been conducted otherwise." *Id.* (quoting *Peterson v BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). It cannot be disputed that but for these bad faith actions, the work expended in pursuing the Motion for Sanctions would not have occurred. Plaintiff's argument that the Eleventh Circuit's mandate only authorized the imposition of sanctions for "dragg[ing] out discovery with frivolous objections" mischaracterizes the essence of its opinion. (DE 113 at 1). Although the bad faith actions may have been confined to a certain time period, the proceedings requesting relief for bad faith acts are but-for consequences stemming from those bad acts.

Finally, I turn to the work expended in preparing experts. The Eleventh Circuit explicitly points to the Plaintiff's behavior with regards to expert discovery, noting:

> "Although the district court did not cite to Celsius' expert witness disclosures in its sanctions order, those disclosures also highlight the deficiencies in Celsius' discovery responses. Instead of producing a report evidencing the consumer confusion for the trade dress infringement claim that it raised, Celsius produced a contract for a study that was not yet completed."

*Joel B. Rothman, et. al. v. A Shoc Beverage, LLC, et al*, 22-12687-HH at 18. I agree that certain actions with respect to expert discovery were similarly conducted in bad faith and, therefore, some of Defendants' time and effort were needlessly expended preparing experts for what turned out to be Plaintiff's spurious expert discovery. Similarly, I find Plaintiff's challenge to some but not all experts unavailing. (DE 113 at ¶ 17). To the extent any of the time expended reflects time incurred reviewing and responding to the deficiencies of Plaintiff's experts, it is awardable. Accordingly, I

address only what the proper amount awarded should be, rather than entertain Plaintiff's broader challenge to whether these costs may be awarded at all.

Defendants note that expert witness fees, "related to the work of the experts, prior to the improper, bad faith expert disclosures of Sriplaw, have been reduced by a total amount of $25,172.50. This reduction reflects removal of fees incurred on or prior to August 9, 2021." (DE 103 at 6). In turn, they present remaining expert fees in the total amount of $64,777.50, relating to the work the experts performed related specifically to Sriplaw's sanctionable conduct. (*Id.*). Plaintiff, however, argues that the "Defendants' time logs contain entries relating to expert witnesses that predate August 9, 2021. That time is not compensable." (DE 113 at 6).

Plaintiff is correct to point out an inconsistency between Defendant's statement in its Motion and the un-highlighted entries in its exhibits.[1] A review of Exhibit B, for example, shows an unhighlighted, and therefore preserved, time entry for July 16, 2021 by Howard Hogan, which includes "[c]ommunications with potential experts, client team regarding retention of survey expert." (DE 103-1 at 12). On July 23, 2021, Laura Mumm logs .8 hours to "[c]onduct legal research regarding potential survey experts." (*Id.* at 13). Yet, on July 26, 2021, a highlighted, and therefore removed, entry for Laura Mumm similarly shows .6 hours logged for "[c]onduct legal research regarding potential experts/draft summary of same." (*Id.*). Consequently, although the Parties agree that where costs are awarded, it could not have been before August 9, 2021, it appears that Defendants have nevertheless failed to adequately remove the requisite costs. Thus, I will

---

[1] Counsel notes in its declaration that "The portions highlighted in yellow on the attached copy indicate those entries that have been removed for purposes of recalculating the proper award amount, the entry highlighted in blue has been reduced by half, and the entry highlighted in green has been reduced by two thirds." (DE 103-1 at 2).

require revised briefing to clarify and reflect only time entries following Plaintiff's expert disclosure.

Where—as is the case here— "fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) (explaining that "trial courts . . . should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.'"). Here, the fee documentation is certainly voluminous. *See, e.g., Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 Fed. Appx. 684, 687 (11th Cir. 2011) ("The more than $200,000 [the movant] seeks in attorneys' fees is indication enough that this case is voluminous."). I therefore find it sufficient to reserve ruling on the proper fee award; instead requiring the Parties to confer in light of the findings made in this Order. However, upon a review of the record and the billing statements, I find a number approaching Defendant's characterization of $243,891.84 to be justifiable, excluding only time entries in Defendant's billing prior to Plaintiff's expert disclosure.

Finally, I note that Plaintiff has filed a Motion for Leave to File a *Sur-Reply*. (DE 116). In exercising my discretion, I do not find that it would meaningfully inform or change the analysis of my Order.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Entry of Amended Judgment (DE 103) is **GRANTED IN PART**.

7

2. The Parties shall confer and file supplemental briefing identifying an agreed cost in accordance with this Order. A joint submission, noting any continued area of disagreement, shall be filed no later than **February 6, 2026**.

3. Plaintiff's Motion for Leave to File Sur-Reply (DE 116) is **DENIED**.

**SIGNED** in Chambers, at West Palm Beach, Florida, this 29 day of January, 2026.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT COURT

cc.

Counsel of Record